FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS 2003 DEC 23 A 8: 14

CIVIL ACTION NO. DISTRICT COURT
DISTRICT OF MASS.

GAETANO P. DELUCA,

# 03 CV 12592 REK

        Plaintiff                              )
                                               )
    v.                                         )
                                               )  52676
THE TOWN OF HINGHAM, HINGHAM BOARD OF HEALTH,  ) 150.00
PETER B. BICKFORD, CHAIRMAN, RAYMOND E. BEALE  AMOUNT, $
RUTH ANNE BECK, TREASURER/TAX COLLECTOR,       SUMMONS ISSUED
BRUCE T. CAPMAN, EXECUTIVE HEALTH OFFICER and  LOCAL RULE 4.1
FIRST HIGH STREET TRUST,                       WAIVER FORM
                                               MCF ISSUED
        Defendants                             BY DPTY. CLK. CMG
                                               12-23-03

COMPLAINT
                                    MAGISTRATE JUDGE Collings

BACKGROUND

1.    The plaintiff, Gaetano P. DeLuca, ("DeLuca") is a
      resident of Hingham, Massachusetts, Plymouth County and
      is the owner of various lots of land in Hingham,
      Massachusetts, Plymouth County.  The aforesaid lots are
      described as follows:

      Lot 2, Lazell Street; Lots 18 (22), 20 (26), 33 (15),
      34 (11) & 35 (9) Stagecoach Road; Lot 11 Hitching Post
      Lane; Lots 42 & 32 Rockwood Road; Lots 1 (1), 2A (3) and
      5 (9) Andrews Isle.
      Respectively identified as the "lots."

2.   The defendant, Town of Hingham, is a duly organized political subdivision of the Commonwealth, created in accordance with Massachusetts General Laws.  Peter. B. Bickford is the Chairperson of the Hingham Board of Health.

3.   Commencing in 1984 and continuing through 2003, the plaintiff sought to develop and obtain permits for the subject lots in order to build single family homes on each lot.

4.   In fact, in at least four (4) instances, the Town of Hingham, acting through its Board of Health, issued permits to the plaintiff to construct septic disposal systems on several of the lots including lots on Stagecoach Road and Hitching Post Lane.

5.   Notwithstanding, subsequent to the issuance of these permits, the Town of Hingham, without any apparent or valid reason revoked the aforesaid permits.  These revocations were without notice and in violation of the laws of the Commonwealth of Massachusetts.

6.   Even though the defendant refused to allow the plaintiff the use of the aforesaid property, the defendant nevertheless continues to appraise/assess the lots as buildable lots with high property values.

## COUNT I

7. The Board of Health placed the neighbors and Public in place of Authority and allowed the neighbors in concert with the Board of Health to **slander** **and** **Libel** the plaintiff in making false statements and distributing letters containing false statements in the presence of the Press and the Press published them.

8. These false statements, letters and complaints were published by the Press and are still available for everyone to read, including but not limited to the abutters, neighbors and others to inflict harm on the plaintiff, for example, Business Associates including our Banking Institutions, Real Estate Agencies along with their clients and the Town of Hingham's populace, etc.

9. To this day the plaintiff is held in ridicule and scorn.

**COUNT II**

10. The Plaintiff reaffirms and realleges Paragraphs 1 through 9 above.

11. The Board of Health held redundant meetings on the plaintiffs lots even after the Board of Health approved the Lots, issued permits and then revoked them contrary to M.G.L. Chapter III, Section 31E and Chapter 111, Section 127P.

**COUNT III**

12. The Plaintiff reaffirms and realleges Paragraphs 1 through 11 above.

13. After the Plaintiff performed its Percolation Tests, the Board of Health approved them.  The Board of Health extended them for one year and after the many demands made on the Plaintiff over the next (11) eleven years the Board of Health refused to extend the Percolation Tests stating "The Board of Health only gives (1) one extension".

14. In fact, the Chairman of the Board of Health, Raymond E. Beale, Jr., performed Percolation Tests on his Lot at Whiting Street on the same percolation season as did the plaintiff, and gave himself a (14) fourteen year and (6) months extension.

-4-

15. The only reason that the Plaintiff was delayed in its development and construction was that the Planning Board without cause refused to endorse the Plaintiff's Plan. The Planning Board had no legal reason or cause to deny the Plaintiff's Plan.

16. The only reason the Plaintiff needed an extension of time was because the Planning Board refused to endorse the Plaintiff's Plan, "approval under the Subdivision Control Law not Required".

17. The Planning Board was familiar with the (Subdivision Control Law) requirements and the reason that the Planning Board gave for not endorsing the Plaintiff's Plan was not valid, as others were treated differently.

18. The Planning Board from the time the Plaintiff submitted its plan endorsed approximately 25 different plans on Lazell Street, for exactly the same reason as the Plaintiff.

19. The Plaintiff appealed the Planning Board's rejection at the Plymouth Superior Court.

20.  Judge Byron held a site visit at the Lazell Street Site,
     present were Judge Chris Byron his Aide (Court Officer),
     Cap Vinal of the Planning Board, Gaetano J. DeLuca and
     Gaetano P. DeLuca.

21.  Judge Chris Byron and the Group walked the entire site
     (frontage) of the 17.74 acres of land.

22.  During the walk, Mr. Vinal of the Planning Board made a
     comment that he would allow the Plaintiff entrance at a
     certain spot.  Judge Byron responded, you will allow the
     plaintiff entrance at any location of the frontage they
     choose.

23.  Judge Byron in his decision ordered the defendants' to
     endorse the plan.

24.  The Planning Board met with a Member of the Board of
     Selectmen Edward Lewiecki the Chairman and cut a deal:

     "Mr. Devine of the Planning Board you back us against
      the Plaintiff and we'll turn down the Lombardi
      Subdivision on Turkey Hill behind your (Lewiecki) house
      at 13 Eastgate Lane."

                              -6-

With the agreement made, The Planning Board appealed
Judge Byron's decision and the Planning Board rejected
the Lombardi Subdivision.

25.    The Planning Board appealed the Superior Court decision
       knowing full well they could <u>not</u> prevail.

26.    Peter B. Bickford and others attempted to intervene in
       the appeal process and filed an <u>Amicus</u> <u>Curiae</u> Brief.

27.    Joseph J. and Ann L. Lombardi brought a Complaint
       against the Town of Hingham for refusal of the Planning
       Board to endorse their plan at Plymouth CA86-23405.

28.    It was said afterward that a settlement was made by the
       Town of Hingham paying the Lombardi interests $500,000.

29.    Mr. Van Aken came to my office and offered me
       $750,000.00 for the Lazell Street property and the
       Planning Board would drop its Appeal, I refused.

30.    Mr. Van Aken came to my office and offered me
       $750,000.00 for the Lazell Street property and the
       Planning Board will approve it, and the fight will be
       over, I refused.

-7-

31.  Mr. Van Aken will buy my Lot on Minuteman Road for
     $125,000.00, I agreed.

     He (Van Aken) will buy the Cushing Street property and
     deal with the Authorities, I refused.

32.  Jack Van Aken came to my office, with an Agreement to
     Purchase Minuteman Road.

     NOTE:  HE HAD ONLY (2) WEEKS TO DEAL WITH THE HINGHAM
            PLANNING BOARD.

            I DID NOT REPLY TO HIS STATEMENT.

33.  Jack Van Aken called me, did we make a decision on
     Lazell Street.

     NOTE:  JACK VAN AKEN WAS FURIOUS, HE IS THE ONLY ONE
            THAT CAN MAKE A DEAL WITH THE PLANNING BOARD, HIS
            (30) DAY OPTION WITH THE PLANNING BOARD IS
            RUNNING OUT, AND THEY ARE GOING TO SUE ME
            PERSONALLY IF I DON'T ACCEPT IT.

34.  I (Gaetano P. DeLuca) went to Minuteman Road and saw
     Tony Muzzi and Doug Patterson moving the Muzzi backhoe
     out.  (He broke a shaft in the machine).

Tony Muzzi, in front of Doug Patterson, said "what's the matter with the Van Aken deal on Lazell Street, I had it all straightened out for the approval of the 5 Lots by the Planning Board.  Van Aken agreed through me (Tony Muzzi) to install the hot top driveway at Alan Devine's (the Planning Board Chairman) home on Blue Sky Drive in Hingham."  In exchange for the approval.

Tony Muzzi then said, I have with Van Aken built the Alan Devine addition (about $150,000.00 worth of work) for no compensation, only favors at the Planning Board.

Tony Muzzi, on my leaving, said "make up your mind if you want the Lazell Street Court dispute settled.  You must make up your mind before September, as he has to put the Devine driveway in before September."  I responded there is nothing to say.

The decision from the Appeal court was received.

NOTE:  "JUDGEMENT AFFIRMED"

The Planning Board (Devine) at a Board Meeting refused to sign the Plan.  Finally, he signed it.

35.  After the Planning Board and the Board of Health,
     (Bickford, Sullivan, Barry, Bennett, Wadleigh, Capman
     and Raymond E. Beale, Jr., the Chairman of the Board of
     Health) forced me to drop Lot 8 at Lazell Street, Brian
     Lewis hired the Perkins Engineering Company to draw a
     plan and file a Form "A" Plan, requesting the Planning
     Board to endorse his Plan.

36.  Brian Lewis then filed his application with the Planning
     Board and the Planning Board in seven (7) days approved
     the plan with the notation:
     "Approval under the Subdivision Control Law Not
     Required."

     NOTE:  THIS BOARD WAS VERY FAMILIAR WITH THE SUBDIVISION
            CONTROL LAW.  HOWEVER, THEY TREATED ME DIFFERENT
            THAN OTHERS.

37.  FROM THE BEGINNING, THE BOARD OF SELECTMEN FAILED TO
     PROVIDE A CITIZEN OF THE TOWN OF HINGHAM THE PROTECTION
     IT EXPECTS UNDER THE CONSTITUTION FROM THREATS,
     HARASSMENT, DECEIT AND FRAUD FROM ITS OWN EXECUTIVE
     OFFICERS AND BOARD MEMBERS, (PLANNING, HEALTH,
     CONSERVATION COMMISSION) EVEN AFTER THE COURTS ISSUED
     RULINGS, THEY FAILED TO ACT AND THE SELECTMEN REMAINED
     SILENT.

-10-

**COUNT IV**

38.  The Plaintiff reaffirms and realleges Paragraphs 1
     through 37 above.

39.  After the Plaintiffs percolation tests were approved by
     the Board of Health, the Board of Health sent the
     plaintiff (4) four letters to perform certain other work
     for the sole purpose to have reason to reject our lots.
     **All contrary to the Regulations.**  The letters were dated
     March 11, 1987; April 21, 1987; May 6, 1987; and May 1,
     1989.

     NOTE:  The contents of these letters were not imposed on
            himself as the Chairman of the Board of Health
            while performing Percolation Tests on his Lots at
            Whiting Lane, Hingham, Massachusetts.

40.  The March 11, 1987, letter was <u>not</u> part of the Board of
     Healths Regulations when the Plaintiff performed its
     Percolation Tests on December 18 and 19, 1984 and
     January 16 and 17, 1985.

41.  The contents of this letter did <u>not</u> appear in the Board
     of Health's Regulations until April 15, 1987 the date it
     was adopted.

42. However, The Board of Health did not send them to the
    Town Clerk for approval until:
    May 7, 1990; April 27, 1995; June 1996; and
    October 15, 1998.

43. The March 11, 1987, directive attached to the Plaintiff
    was not applied to the Chairman of The Board of Health.
    (Raymond E. Beale, Jr.).  The Chairman performed his
    Percolation Tests at Whiting Street on February 13,
    1985.

44. Notwithstanding, these Regulations were arbitrarily
    issued without validity.  Thus, the bell is still
    tolling as to the Statute of Limitations.

45. The April 21, 1987, letter was not part of the Board of
    Healths Regulations when the Plaintiff performed its
    Percolation Tests on December 18 and 19, 1984 and
    January 16 and 17, 1985.

46. The contents of this letter did not appear in the Board
    of Health's Regulations until April 15, 1987 the date it
    was adopted.

47. However, The Board of Health did not send them to the
    Town Clerk for approval until:
    May 7, 1990; April 27, 1995; June 1996; and
    October 15, 1998.

48. The April 21, 1987, directive attached to the Plaintiff
    was <u>not</u> applied to the Chairman of The Board of Health.
    (Raymond E. Beale, Jr.).  The Chairman performed his
    Percolation Tests at Whiting Street on February 13,
    1985.

49. Notwithstanding, these Regulations were arbitrarily
    issued without validity.  Thus, the bell is still
    tolling as to the Statute of Limitations.

50. The May 6, 1987, letter was <u>not</u> part of the Board of
    Healths Regulations when the Plaintiff performed its
    Percolation Tests on December 18 and 19, 1984 and
    January 16 and 17, 1985.

51. The contents of this letter did <u>not</u> appear in the Board
    of Health's Regulations until April 15, 1987 the date it
    was adopted.

52. However, The Board of Health did <u>not</u> send them to the
    Town Clerk for approval until:

    May 7, 1990; April 27, 1995; June 1996; and
    October 15, 1998.

-13-

53.  The May 6, 1987, directive attached to the Plaintiff
     was not applied to the Chairman of The Board of Health.
     (Raymond E. Beale, Jr.).  The Chairman performed his
     Percolation Tests at Whiting Street on February 13,
     1985.

54.  Notwithstanding, these Regulations were arbitrarily
     issued without validity.  Thus, the bell is still
     tolling as to the Statute of Limitations.

55.  The May 1, 1989, letter was not part of the Board of
     Healths Regulations when the Plaintiff performed its
     Percolation Tests on December 18 and 19, 1984 and
     January 16 and 17, 1985.

56.  The contents of this letter did not appear in the Board
     of Health's Regulations until May 24, 1989 the date it
     was adopted.

57.  However, The Board of Health did not send them to the
     Town Clerk for approval until:

     May 7, 1990; April 27, 1995; June 1996; and
     October 15, 1998.

-14-

58. The May 1, 1989, directive attached to the Plaintiff
    was not applied to the Chairman of The Board of Health.
    (Raymond E. Beale, Jr.).  The Chairman performed his
    Percolation Tests at Whiting Street on February 13,
    1985.

59. Notwithstanding, these alleged Regulations were
    arbitrarily issued without validity.  Thus, the bell is
    still tolling as to the Statute of Limitations.

## COUNT V

60. The Plaintiff reaffirms and realleges Paragraphs 1
    through 59 above.

61. The Board of Health knowingly accepted false information
    from the abutters and others with no environmental
    background and experience.

62. For example after the Percolation Tests were taken and
    accepted and in (4) four cases when permits were issued,
    Bank Loans received and work done.  The Board of Health
    held a meeting without the plaintiffs presence and
    revoked the permits.

-15-

63.   In another case a neighbor falsely represented to the
      Board of Health that his well for potable water was
      within (100.') feet of the plaintiff's proposed Septic
      System.   This was absolutely false and the Board of
      Health was aware that it was false.

64.   However, I retained an Engineer with (2) two disciplines
      a Mr. Stephen J. Siegl a Professional Registered
      Engineer with Registration #8069 who is also a
      Registered Land Surveyor with Registration #10365.

65.   Mr. Siegl went to the (2) two properties and submitted
      to the Board of Health his Certification of what he
      found and this information was again submitted to the
      Board of Health.

66.   "The plaintiffs proposed Septic System at Lot #2 Lazell
      Street was no closer than (300.') three hundred feet
      away from Mr. David Barry's well at 83 Lazell Street,
      Hingham, Massachusetts".

      NOTE:   These actions by the Board of Health were taken
              after the Percolation Tests were performed and
              approved by the Board of Health, contrary to
              M.G.L. Chapter 111, Section 31E and Chapter 111,
              Section 127P.

-16-

## COUNT VI

67. The Plaintiff reaffirms and realleges Paragraphs 1 through 66 above.

68. Mr. Bruce T. Capman the Executive Health Officer of the Board of Health for the Town of Hingham filed a false Affidavit.

69. On January 8, 1997, and September 19, 2002, Mr. Capman filed his Sworn Affidavit stating that his Degree from the University of Massachusetts was in:

"Environmental Science"

70. This Sworn Affidavit Proffered by Mr. Capman, knowing full well that it was _false._ His Degree was in:

"Public Health"

NOTE: This was done by Mr. Capman to embellish his expertise in the Environmental Sciences which is more conducive to Percolation Testing and Septic Systems. In fact, he had **none** of this experience in his Degree in **"Public Health"**.

-17-

71.  In this instance, Mr. Capman was trying to appear more experienced than the Engineers, Land Surveyors and Environmental Scientists that the Plaintiff employed, to determine the wetlands lines, survey the properties and perform the Engineering required to design the Septic Systems and to draw the plans, and more importantly to cheat the Plaintiff.

72.  On July 15, 1987, Mr. Capman said that Raymond E. Beale, Jr. the Chairman of the Board of Health, is a Professional Registered Engineer and a Registered Land Surveyor and suggested that the Plaintiff use heavy duty pipe.  I agreed.

73.  On August 21, 1987, Capman said even though the Septic Tank is not in the driveway, can we use a Type H20, I said yes.

Bruce Capman said Town Counsel James A. Toomey wants this Lot (Lot 2) resolved.

74.  On October 1, 1987, in a meeting with Bruce Capman, he said he will issue the permit for Lot 2, this month.

75.  On October 9, 1987, Capman said he told Peter B.
     Bickford that our Lots are approved.  And "If I don't
     accept the Percolation Tests the Board of Health will be
     in Violation of the Plaintiffs Civil Rights."

76.  On April 6, 1988, I went to the Board of Health and gave
     Bruce Capman (3) Orders of Conditions from D.E.Q.E.
     approving Lot 11, Hitching Post and Lot 2, Lazell
     Street, Bruce Capman said call him Friday and he will
     let me know when he will issue the permits.  Board of
     Health voted not to consider permits until D.E.Q.E.
     issued its Order of Conditions approving Lot 2.  It is
     now resolved.

77.  On April 29, 1988, Norman Levin, P.E. received a call
     from Bruce Capman of the Board of Health.  Bruce Capman
     stated:  "that he checked the Septic System Plans for
     Lots 1 and 2 and they are fine and will issue the
     Permits on May 2, 1988."

78.  On May 2, 1988, Bruce Capman of the Board of Health
     called Norman Levin, P.E. can he put elevations on Test
     Pits we excavated at Lots 1 and 2 on October 9, 1987.

79.  On May 2, 1988, talked to <u>Bruce</u> <u>Capman</u> of the Board of
     HEalth he said Norman Levin, P.E. is going to place Test
     Pit elevations on plans that he witnessed on 10-9-87.

80.  In accordance with <u>Bruce</u> <u>Capman's</u> (Board of Health)
     instructions of May 2, 1988, Norman Levin, P.E. placed
     the elevations of Test Pits on plans and sent me the
     plans and I dropped them off to the Board of Health (4)
     sets of plans for Lot 1, and (4) sets of plans for
     Lot 2.

81.  On May 3, 1988, Norman Levin, P.E. called that he was
     going to the Board of Health meeting on May 4, 1988.

82.  On May 4, 1988, <u>Bickford</u> <u>now</u> <u>a</u> <u>Member</u> <u>of</u> <u>the</u> <u>Planning</u>
     <u>Board,</u> at the Board of Health Meeting.  <u>Bruce</u> <u>Capman</u>
     recommended to <u>approve</u> <u>Lot</u> <u>1</u> and <u>not</u> to approve <u>Lot</u> <u>2</u>
     because of water being next to it.

83.  On May 10, 1988, Marie Manchester, Board of Health
     issued permit for Lot No. 1.

84.  On August 29, 1988, Peter Arena Foreman for P.E. Landers
     said a different standard is being used for the DeLuca's
     in approving Lots around Town.

-20-