166.  On December 16, 1986 after performing Percolation Tests
      and getting the same refusal from the Board of Health,
      we stopped all of our efforts as the Board of Health
      refused any testing that we performed.

      Mr. Bosco the Board of Health Representative was
      present as a witness to the Percolation Testing.

      After being rejected by the Town of Hingham Board of
      Health we advised Brian Lewis that we were unable to
      convince the Board of Health to accept our Percolation
      Testing and we both withdrew our agreement.

167.  On April 3, through April 29, 1987, Brian Lewis
      obtained the following approvals:

      Brian Lewis had Perkins Engineering, Inc., draw up a
      plan for, "Approval Under the Subdivision Control Law
      Not Required."

      Brian Lewis filed his "Application for Endorsement
      (Form A) with the Planning Board."

      The Planning Board (6) days later stamped the plan
      approved.  See Paragraphs 39 and 30 above.

      Mr. Bosco in one year gave the Plaintiff (1) passing
      Percolation Test.

-42-

168.    The Plaintiff accomplished Percolation Testing for over
        (1) one year.  Permits should have been issued for this
        lot, because the Plaintiff came up with better test
        results than Mr. Choo's people got.

169.    On June 14, 1987, 2 months after the Percolation Season
        was closed I was going by Lot 8 Lazell Street and saw a
        young man from L.E.A. and he was digging Test Pits with
        a post hole digger.  I stopped to see what they were
        doing.

        NOTE:   a.   PROPER PROCEDURES WERE NOT BEING USED.

                b.   PERCOLATION TESTS WERE NOT TAKEN.

                c.   AND SUPPOSEDLY THE 3 HOLES THEY EXCAVATED
                     WERE (8'.0), (26'.2") AND (35.'0) FROM THE
                     EDGE OF THE STREET.

                D.   THE PERSON CONDUCTING THE PERCOLATION TEST
                     WAS 20 YEARS OLD FROM BRIGGS.  A PERSON
                     NAMED DAVID B. MASON AN ENGINEERING
                     ASSISTANT.

170.    Three Test Pits were taken and only two (2) Percolation
        Tests were taken and the alleged results were, as
        follows:

        T.P. No. 1 had ledge at 8.'5"  -  No Test
        T.P. No. 2 had ledge at 6.'5"  -  14.6 min.
        T.P. No. 3 had ledge at 8.'0"  -  14.0 min.

171.  NOTES:  1.  AND THE LEACHING FIELD IS (100.+/-) AWAY
                   FROM THE TEST PITS.
            2.  DELUCA WAS REJECTED AT LOT #8 AND THE BOARD
                   OF HEALTH APPROVED THIS TYPE OF RESULT.
            3.  I WAS TOLD THE FIX WAS ON BY MR. CAPMAN.
            4.  THE PERCOLATION TESTS DONE AT THIS LOT FOR
                   CHOO, ARE WORTHLESS.  JUDGING WHAT WAS
                   REQUIRED FROM THE PLAINTIFF.

172.  The (4) four letters that the Board of Health sent to
      Plaintiff dated:

      March 11, 1987; April 21, 1987; May 6, 1987;
      and May 1, 1989.

      These Regulations were not in existence when the
      Plaintiff accomplished its Percolation Tests and
      applied for its permits.  Thus, it shows the fraudulent
      demands that were bestowed on the Plaintiff by the
      Board of Health.

      Where was Sullivan, Bickford, Barry, Wadleigh, etc.
      when Mr. Choo was performing his percolation Tests?

-44-

173.    FROM THE BEGINNING, THE BOARD OF SELECTMEN FAILED TO
        PROVIDE A CITIZEN OF THE TOWN OF HINGHAM THE PROTECTION
        IT EXPECTS UNDER THE CONSTITUTION FROM THREATS,
        HARASSMENT, DECEIT AND FRAUD FROM ITS OWN EXECUTIVE
        OFFICERS AND BOARD MEMBERS, (PLANNING, HEALTH,
        CONSERVATION COMMISSION) EVEN AFTER THE COURTS ISSUED
        RULINGS, THEY FAILED TO ACT AND THE SELECTMEN REMAINED
        SILENT.

                            **COUNT XV**

174.    The Plaintiff reaffirms and realleges Paragraphs 1
        through 173 above.

175.    From 1987 through 2003, I continually worked at all of
        the Lots and sent letters continuously to the Board of
        Health demanding that they issue the permits that they
        revoked without cause, and they never responded.

176.    Because of the Board of Health's misconduct, I was
        unable to pay my tax bills. Thus, on or about
        November 5, 2003, the Tax Collector sent me a letter
        stating:
        **"THIS PROPERTY IS NOW A TAX POSSESSION OF THE TOWN OF
        HINGHAM."** EVEN THOUGH I WAS ASSURED NO FORECLOSURE
        PROCEEDINGS WOULD OCCUR.

                            -45-

177.  In addition, in the 2002 and 2003 Town Warrant a part
      of the Town taking was granted to a neighbor stating:

      I have just received a copy of the Town of Hingham's
      Warrant and especially Article 34 deeding a parcel of
      this property to a Dr. and Mrs. Creager and stating in
      part:

      "IT CANNOT BE DEVELOPED UNDER CURRENT TOWN REGULATIONS
      AND IT IS LOCATED IN THE AREA CONTRIBUTING TO THE
      FULLING MILL POND AQUIFER." ETC.

      This statement contained in the Town Warrant of 2003 is
      absolutely not true.
      With regards to the Fulling Mill Pond Aquifier, there
      is positively no truth in this allegation, because the
      Plaintiff's Lot 1 was approved and the Board of Health
      issued a permit, a septic system was constructed and a
      home was built and sold.

      Lot 2 and its proposed septic system is adjacent to
      Lot 1 and twenty (20) feet away from the Lot 1 septic
      system.  The percolation testing was accomplished and
      approved.

      See Paragraphs 117, 118, 119, 120, 121, 122, 123, 124,
                      125, 126, 127, 128, 129, 130, 131, 132,
                      133, 134, 135, 136, 137, 138, 139, 140,
                      141, 142, 143, 144, 145, 146, 147 and
                      148

                            -46-

For this, and other reasons the Town of Hingham refused to issue the permits to the Plaintiff and making false accusations and allowing the abutters to falsely accuse this Developer.

### COUNT XVI

178. The Plaintiff reaffirms and realleges Paragraphs 1 through 177 above.

179. The Planning Board, by its Chairman, Alan Devine, conspired with Mr. Edward Lewicki, the Chairman of the Board of Selectmen, against the plaintiff.

   The facts and evidence supporting this claim of conspiracy are contained in the following paragraphs:

   See paragraphs   15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 37.

### COUNT XVII

180. The Plaintiff reaffirms and realleges paragraphs 1 through 179 above.

-47-

181. After the plaintiff was completed with his percolation
testing, Mr. Raymond E. Beale, Jr., the Chairman of the
Board of Health, conspired with others to take away
permits and failed to issue other permits.
See paragraphs 117, 118, 119, 120, 121, 122, 123, 124,
125, 126, 127, 128, 129, 130, 131, 132,
133, 134, 135, 136, 137, 138, 139, 140,
141, 142, 143, 144, 145, 146, 147 and
148.

182. After the percolation testing was completed, the
defendants, by its Chairman of the Board of Health,
Raymond E. Beale, Jr., a Registered Professional
Engineer (P.E.) and a Registered Land Surveyor (R.L.S.)
who is knowledgeable with the Regulations of Title V
conspired with others (Catherine L. Salisbury), Anita
Barry, Peter B. Bickford, Gregory V. Sullivan and
continued on with Mr. Bruce T. Capman, who became the
Executive Health Officer on May 26, 1987. The
following paragraphs will show how this group conspired
and hurt the Plaintiff.
See paragraphs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48,
49, 50, 51, 52, 53, 54, 55, 56, 57, 58.
Also see 138, 139, 140, 141, 142, 143,
144, 145, 146, 147, 148, 149, 150, 151,
152, 153, 154, 155, 156, 157 and 158.

-48-

## COUNT XVIII

183.  The Plaintiff reaffirms and realleges Paragraphs 1 through 182 above.

184.  After the percolation testing was completed at Lot 8, Lazell Street, the Board of Health, through its Chairman Raymond E. Beale, Jr., a Registered Professional Engineer (P.E.) and a Registered Land Surveyor (R.L.S.) who is knowledgeable with the Regulations of Title V conspired with others Peter B. Bickford, Gregory V. Sullivan and, Tuck Wadleigh to hurt the Plaintiff and reject his Percolation Tests. The following Paragraphs will show how this group conspired to hurt the Plaintiff.

See paragraphs  35, 36, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172 & 173

## COUNT XIX

185.  The Plaintiff reaffirms and realleges Paragraphs 1 through 184 above.

-49-

186.  The Board of Health, Executive Officer Mr. Bruce T.
      Capman filed a false Sworn Affidavit against the
      Plaintiff in conspiracy with Pine duBois the
      Conservation Commission's Conservation Officer and
      others, for the purpose to hurt the Plaintiff.

      The facts and evidence supporting this claim of
      conspiracy are contained in the following Paragraphs:

      See paragraphs 68, 69, 70, 71, 72, 73, 74, 75, 76, 77,
                  78, 79, 80, 81, 82, 83 and 84

                           **COUNT XX**

187.  The Plaintiff reaffirms and realleges Paragraphs 1
      through 186 above.

188.  The Conservation Commission's, Conservation Officer Ms.
      Pine duBois filed a false Sworn Affidavit against the
      Plaintiff in conspiracy with Mr. Bruce T. Capman the
      Board of Health's Executive Health Officer and others,
      for the purpose to hurt the Plaintiff.

      The facts and evidence supporting this claim of
      conspiracy are contained in the following Paragraphs:

      See paragraphs 86, 87, 88 and 89

                            -50-

## COUNT XXI

189.    The Plaintiff reaffirms and realleges Paragraphs 1
        through 188 above.

190.    Peter B. Bickford conspired with Gregory Sullivan,
        David Barry, Tuck Wadleigh and others against the
        Plaintiff.

        The facts and evidence supporting this claim of
        conspiracy are contained in the following Paragraphs:

        See Paragraphs 91, 92, 93, 94 and 95

## COUNT XXII

191.    The Plaintiff reaffirms and realleges Paragraphs 1
        through 190 above.

192.    Ms. Ruth Anne Beck the Treasurer/Tax Collector
        conspired with the Conservation Commission's Clifford
        Prentiss, the Chairman of the Board of Selectmen Philip
        Edmundson and Peter B. Bickford the Chairman of the
        Board of Health, against the Plaintiff.

        The facts and evidence supporting this claim of
        conspiracy are contained in the following Paragraphs:

        See Paragraphs 175, 176 and 177

-51-

## COUNT XXIII

193.    The Plaintiff reaffirms and realleges Paragraphs 1
        through 192 above.

194.    From 1984 to the present, the plaintiff provided goods
        and services to the defendant, First High Street Trust
        on the Lots set out in this Complaint.

195.    First High Street Trust promised and represented to the
        Plaintiff, that these Lots were approved and the monies
        due the plaintiff would be paid.  In fact, First
        High Street Trust, used the Lots as security for all
        of the amounts due the plaintiff.

196.    The defendant has failed to pay the Plaintiff anything
        for his work and for the goods and services provided
        by the plaintiff.

197.    The value of the goods and services provided by the
        plaintiff is $4,500,000.00.

-52-

Wherefore, the Plaintiff prays that this Honorable Court find that the defendants Violated the Plaintiff's Rights and are accordingly jointly and severally liable for all of the Plaintiff's damages, for example.

    a.  Return the property back to the Plaintiff.

    b.  Forgive the Plaintiff for all of the Taxes owed.

    c.  Reissue and/or grant the permits revoked and/or not issued.

    d.  Or in the alternative, award the Plaintiff damages in the sum of $4,500,000.00 plus Costs and Attorneys Fees.

THE PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.

Dated:  December 23, 2003

Respectfully submitted,

Gaetano P. DeLuca
140 High Street
Hingham, MA 02043

-53-