FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT

2004 JUL 12  A 8: 56

DISTRICT OF MASSACHUSETTS

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION NO. 03 CV 12592 REK

GAETANO P. DELUCA,                                    )
                                                      )
            Plaintiff                                 )
                                                      )
    v.                                                )
                                                      )
THE TOWN OF HINGHAM, HINGHAM BOARD OF HEALTH,         )
PETER B. BICKFORD, CHAIRMAN, RAYMOND E. BEALE, JR.,   )
RUTH ANNE BECK, TREASURER/TAX COLLECTOR,              )
BRUCE T. CAPMAN, EXECUTIVE HEALTH OFFICER and         )
FIRST HIGH STREET TRUST,                              )
                                                      )
            Defendants                                )

## FIRST AMENDED COMPLAINT
------------------------

### BACKGROUND
_____

1.   The plaintiff, Gaetano P. DeLuca, ("DeLuca") is a

     resident of Hingham, Massachusetts, Plymouth County and

     is the owner of various lots of land in Hingham,

     Massachusetts, Plymouth County.  The aforesaid lots are

     described as follows:

     Lot 2, Lazell Street; Lots 18 (22), 20 (26), 33 (15),

     34 (11) & 35 (9) Stagecoach Road; Lot 11 Hitching Post

     Lane; Lots 42 & 32 Rockwood Road; Lots 1 (1), 2A (3) and

     5 (9) Andrews Isle.

     Respectively identified as the "lots."

2.  The defendant, Town of Hingham, is a duly organized political subdivision of the Commonwealth, created in accordance with Massachusetts General Laws.  Peter. B. Bickford is the Chairperson of the Hingham Board of Health.

3.  Commencing in 1984 and continuing through 2003, the plaintiff sought to develop and obtain permits for the subject lots in order to build single family homes on each lot.

4.  In fact, in at least four (4) instances, the Town of Hingham, acting through its Board of Health, issued permits to the plaintiff to construct septic disposal systems on several of the lots including lots on Stagecoach Road and Hitching Post Lane.

5.  Notwithstanding, subsequent to the issuance of these permits, the Town of Hingham, without any apparent or valid reason revoked the aforesaid permits.  These revocations were without notice and in violation of the laws of the Commonwealth of Massachusetts.

6.  Even though the defendant refused to allow the plaintiff the use of the aforesaid property, the defendant nevertheless continues to appraise/assess the lots as buildable lots with high property values.

## COUNT I

7.  The Board of Health placed the neighbors and Public in place of Authority and allowed the neighbors in concert with the Board of Health to **slander and Libel** the plaintiff in making false statements and distributing letters containing false statements in the presence of the Press and the Press published them.

8.  These false statements, letters and complaints were published by the Press and are still available for everyone to read, including but not limited to the abutters, neighbors and others to inflict harm on the plaintiff, for example, Business Associates including our Banking Institutions, Real Estate Agencies along with their clients and the Town of Hingham's populace, etc.

9.  To this day the plaintiff is held in ridicule and scorn.

## COUNT II

10. The Plaintiff reaffirms and realleges Paragraphs 1 through 9 above.

11. The Board of Health held redundant meetings on the plaintiffs lots even after the Board of Health approved the Lots, issued permits and then revoked them contrary to M.G.L. Chapter III, Section 31E and Chapter 111, Section 127P.

## COUNT III

12. The Plaintiff reaffirms and realleges Paragraphs 1 through 11 above.

13. After the Plaintiff performed its Percolation Tests, the Board of Health approved them. The Board of Health extended them for one year and after the many demands made on the Plaintiff over the next (11) eleven years the Board of Health refused to extend the Percolation Tests stating "The Board of Health only gives (1) one extension".

14. In fact, the Chairman of the Board of Health, Raymond E. Beale, Jr., performed Percolation Tests on his Lot at Whiting Street on the same percolation season as did the plaintiff, and gave himself a (14) fourteen year and (6) months extension.

-4-

15.  The only reason that the Plaintiff was delayed in its development and construction was that the Planning Board without cause refused to endorse the Plaintiff's Plan. The Planning Board had no legal reason or cause to deny the Plaintiff's Plan.

16.  The only reason the Plaintiff needed an extension of time was because the Planning Board refused to endorse the Plaintiff's Plan, "approval under the Subdivision Control Law not Required".

17.  The Planning Board was familiar with the (Subdivision Control Law) requirements and the reason that the Planning Board gave for not endorsing the Plaintiff's Plan was not valid, as others were treated differently.

18.  The Planning Board from the time the Plaintiff submitted its plan endorsed approximately 25 different plans on Lazell Street, for exactly the same reason as the Plaintiff.

19.  The Plaintiff appealed the Planning Board's rejection at the Plymouth Superior Court.

20.  Judge Byron held a site visit at the Lazell Street Site,
     present were Judge Chris Byron his Aide (Court Officer),
     Cap Vinal of the Planning Board, Gaetano J. DeLuca and
     Gaetano P. DeLuca.

21.  Judge Chris Byron and the Group walked the entire site
     (frontage) of the 17.74 acres of land.

22.  During the walk, Mr. Vinal of the Planning Board made a
     comment that he would allow the Plaintiff entrance at a
     certain spot.  Judge Byron responded, you will allow the
     plaintiff entrance at any location of the frontage they
     choose.

23.  Judge Byron in his decision ordered the defendants' to
     endorse the plan.

24.  The Planning Board met with a Member of the Board of
     Selectmen Edward Lewiecki the Chairman and cut a deal:

     "Mr. Devine of the Planning Board you back us against
      the Plaintiff and we'll turn down the Lombardi
      Subdivision on Turkey Hill behind your (Lewiecki) house
      at 13 Eastgate Lane."

With the agreement made, The Planning Board appealed
Judge Byron's decision and the Planning Board rejected
the Lombardi Subdivision.

25. The Planning Board appealed the Superior Court decision
knowing full well they could <u>not</u> prevail.

26. Peter B. Bickford and others attempted to intervene in
the appeal process and filed an <u>Amicus Curiae</u> Brief.

27. Joseph J. and Ann L. Lombardi brought a Complaint
against the Town of Hingham for refusal of the Planning
Board to endorse their plan at Plymouth CA86-23405.

28. It was said afterward that a settlement was made by the
Town of Hingham paying the Lombardi interests $500,000.

29. Mr. Van Aken came to my office and offered me
$750,000.00 for the Lazell Street property and the
Planning Board would drop its Appeal, I refused.

30. Mr. Van Aken came to my office and offered me
$750,000.00 for the Lazell Street property and the
Planning Board will approve it, and the fight will be
over, I refused.

31.  Mr. Van Aken will buy my Lot on Minuteman Road for
     $125,000.00, I agreed.

     He (Van Aken) will buy the Cushing Street property and
     deal with the Authorities, I refused.

32.  Jack Van Aken came to my office, with an Agreement to
     Purchase Minuteman Road.

     NOTE:  HE HAD ONLY (2) WEEKS TO DEAL WITH THE HINGHAM
            PLANNING BOARD.

            I DID NOT REPLY TO HIS STATEMENT.

33.  Jack Van Aken called me, did we make a decision on
     Lazell Street.

     NOTE:  JACK VAN AKEN WAS FURIOUS, HE IS THE ONLY ONE
            THAT CAN MAKE A DEAL WITH THE PLANNING BOARD, HIS
            (30) DAY OPTION WITH THE PLANNING BOARD IS
            RUNNING OUT, AND THEY ARE GOING TO SUE ME
            PERSONALLY IF I DON'T ACCEPT IT.

34.  I (Gaetano P. DeLuca) went to Minuteman Road and saw
     Tony Muzzi and Doug Patterson moving the Muzzi backhoe
     out.  (He broke a shaft in the machine).

Tony Muzzi, in front of Doug Patterson, said "what's the matter with the Van Aken deal on Lazell Street, I had it all straightened out for the approval of the 5 Lots by the Planning Board.  Van Aken agreed through me (Tony Muzzi) to install the hot top driveway at Alan Devine's (the Planning Board Chairman) home on Blue Sky Drive in Hingham."  In exchange for the approval.

Tony Muzzi then said, I have with Van Aken built the Alan Devine addition (about $150,000.00 worth of work) for no compensation, only favors at the Planning Board.

Tony Muzzi, on my leaving, said "make up your mind if you want the Lazell Street Court dispute settled.  You must make up your mind before September, as he has to put the Devine driveway in before September."  I responded there is nothing to say.

The decision from the Appeal court was received.

**NOTE:**  **"JUDGEMENT AFFIRMED"**

The Planning Board (Devine) at a Board Meeting refused to sign the Plan.  Finally, he signed it.

35.  After the Planning Board and the Board of Health,
     (Bickford, Sullivan, Barry, Bennett, Wadleigh, Capman
     and Raymond E. Beale, Jr., the Chairman of the Board of
     Health) forced me to drop Lot 8 at Lazell Street, Brian
     Lewis hired the Perkins Engineering Company to draw a
     plan and file a Form "A" Plan, requesting the Planning
     Board to endorse his Plan.

36.  Brian Lewis then filed his application with the Planning
     Board and the Planning Board in seven (7) days approved
     the plan with the notation:
     "Approval under the Subdivision Control Law Not
     Required."

     NOTE:  THIS BOARD WAS VERY FAMILIAR WITH THE SUBDIVISION
            CONTROL LAW. HOWEVER, THEY TREATED ME DIFFERENT
            THAN OTHERS.

37.  FROM THE BEGINNING, THE BOARD OF SELECTMEN FAILED TO
     PROVIDE A CITIZEN OF THE TOWN OF HINGHAM THE PROTECTION
     IT EXPECTS UNDER THE CONSTITUTION FROM THREATS,
     HARASSMENT, DECEIT AND FRAUD FROM ITS OWN EXECUTIVE
     OFFICERS AND BOARD MEMBERS, (PLANNING, HEALTH,
     CONSERVATION COMMISSION) EVEN AFTER THE COURTS ISSUED
     RULINGS, THEY FAILED TO ACT AND THE SELECTMEN REMAINED
     SILENT.

## COUNT IV

38.  The Plaintiff reaffirms and realleges Paragraphs 1 through 37 above.

39.  After the Plaintiffs percolation tests were approved by the Board of Health, the Board of Health sent the plaintiff (4) four letters to perform certain other work for the sole purpose to have reason to reject our lots. **All contrary to the Regulations.** The letters were dated March 11, 1987; April 21, 1987; May 6, 1987; and May 1, 1989.

   NOTE:  The contents of these letters were not imposed on himself as the Chairman of the Board of Health while performing Percolation Tests on his Lots at Whiting Lane, Hingham, Massachusetts.

40.  The March 11, 1987, letter was **not** part of the Board of Healths Regulations when the Plaintiff performed its Percolation Tests on December 18 and 19, 1984 and January 16 and 17, 1985.

41.  The contents of this letter did **not** appear in the Board of Health's Regulations until April 15, 1987 the date it was adopted.

42. However, The Board of Health did <u>not</u> send them to the
Town Clerk for approval until:
May 7, 1990; April 27, 1995; June 1996; and
October 15, 1998.

43. The March 11, 1987, directive attached to the Plaintiff
was <u>not</u> applied to the Chairman of The Board of Health.
(Raymond E. Beale, Jr.).  The Chairman performed his
Percolation Tests at Whiting Street on February 13,
1985.

44. Notwithstanding, these Regulations were arbitrarily
issued without validity.  Thus, the bell is still
tolling as to the Statute of Limitations.

45. The April 21, 1987, letter was <u>not</u> part of the Board of
Healths Regulations when the Plaintiff performed its
Percolation Tests on December 18 and 19, 1984 and
January 16 and 17, 1985.

46. The contents of this letter did <u>not</u> appear in the Board
of Health's Regulations until April 15, 1987 the date it
was adopted.

47. However, The Board of Health did <u>not</u> send them to the
Town Clerk for approval until:
May 7, 1990; April 27, 1995; June 1996; and
October 15, 1998.

48.  The April 21, 1987, directive attached to the Plaintiff
     was <u>not</u> applied to the Chairman of The Board of Health.
     (Raymond E. Beale, Jr.).  The Chairman performed his
     Percolation Tests at Whiting Street on February 13,
     1985.

49.  Notwithstanding, these Regulations were arbitrarily
     issued without validity.  Thus, the bell is still
     tolling as to the Statute of Limitations.

50.  The May 6, 1987, letter was <u>not</u> part of the Board of
     Healths Regulations when the Plaintiff performed its
     Percolation Tests on December 18 and 19, 1984 and
     January 16 and 17, 1985.

51.  The contents of this letter did <u>not</u> appear in the Board
     of Health's Regulations until April 15, 1987 the date it
     was adopted.

52.  However, The Board of Health did <u>not</u> send them to the
     Town Clerk for approval until:

     May 7, 1990; April 27, 1995; June 1996; and
     October 15, 1998.

53. The May 6, 1987, directive attached to the Plaintiff was _not_ applied to the Chairman of The Board of Health. (Raymond E. Beale, Jr.).  The Chairman performed his Percolation Tests at Whiting Street on February 13, 1985.

54. Notwithstanding, these Regulations were arbitrarily issued without validity.  Thus, the bell is still tolling as to the Statute of Limitations.

55. The May 1, 1989, letter was _not_ part of the Board of Healths Regulations when the Plaintiff performed its Percolation Tests on December 18 and 19, 1984 and January 16 and 17, 1985.

56. The contents of this letter did _not_ appear in the Board of Health's Regulations until May 24, 1989 the date it was adopted.

57. However, The Board of Health did _not_ send them to the Town Clerk for approval until:

    May 7, 1990; April 27, 1995; June 1996; and October 15, 1998.

58. The May 1, 1989, directive attached to the Plaintiff was <u>not</u> applied to the Chairman of The Board of Health. (Raymond E. Beale, Jr.).  The Chairman performed his Percolation Tests at Whiting Street on February 13, 1985.

59. Notwithstanding, these alleged Regulations were arbitrarily issued without validity.  Thus, the bell is still tolling as to the Statute of Limitations.

### <u>COUNT V</u>

60. The Plaintiff reaffirms and realleges Paragraphs 1 through 59 above.

61. The Board of Health knowingly accepted false information from the abutters and others with <u>no</u> environmental background and experience.

62. For example after the Percolation Tests were taken and accepted and in (4) four cases when permits were issued, Bank Loans received and work done.  The Board of Health held a meeting without the plaintiffs presence and revoked the permits.

63.  In another case a neighbor falsely represented to the
     Board of Health that his well for potable water was
     within (100.') feet of the plaintiff's proposed Septic
     System.  **This** **was** **absolutely** false and the Board of
     Health was aware that it was false.

64.  However, I retained an Engineer with (2) two disciplines
     a Mr. Stephen J. Siegl a Professional Registered
     Engineer with Registration #8069 who is also a
     Registered Land Surveyor with Registration #10365.

65.  Mr. Siegl went to the (2) two properties and submitted
     to the Board of Health his Certification of what he
     found and this information was again submitted to the
     Board of Health.

66.  "The plaintiffs proposed Septic System at Lot #2 Lazell
     Street was no closer than (300.') three hundred feet
     away from Mr. David Barry's well at 83 Lazell Street,
     Hingham, Massachusetts".

     NOTE:  These actions by the Board of Health were taken
            after the Percolation Tests were performed and
            approved by the Board of Health, contrary to
            M.G.L. Chapter 111, Section 31E and Chapter 111,
            Section 127P.

                              -16-

## COUNT VI

67. The Plaintiff reaffirms and realleges Paragraphs 1 through 66 above.

68. Mr. Bruce T. Capman the Executive Health Officer of the Board of Health for the Town of Hingham filed a false Affidavit.

69. On January 8, 1997, and September 19, 2002, Mr. Capman filed his Sworn Affidavit stating that his Degree from the University of Massachusetts was in:

"Environmental Science"

70. This Sworn Affidavit Proffered by Mr. Capman, knowing full well that it was _false._ His Degree was in:

"Public Health"

NOTE: This was done by Mr. Capman to embellish his expertise in the Environmental Sciences which is more conducive to Percolation Testing and Septic Systems. In fact, he had **none** of this experience in his Degree in _"Public Health"._

-17-

71. In this instance, Mr. Capman was trying to appear more experienced than the Engineers, Land Surveyors and Environmental Scientists that the Plaintiff employed, to determine the wetlands lines, survey the properties and perform the Engineering required to design the Septic Systems and to draw the plans, and more importantly to cheat the Plaintiff.

72. On July 15, 1987, Mr. Capman said that Raymond E. Beale, Jr. the Chairman of the Board of Health, is a Professional Registered Engineer and a Registered Land Surveyor and suggested that the Plaintiff use heavy duty pipe. I agreed.

73. On August 21, 1987, Capman said even though the Septic Tank is not in the driveway, can we use a Type H20, I said yes.

    Bruce Capman said Town Counsel James A. Toomey wants this Lot (Lot 2) resolved.

74. On October 1, 1987, in a meeting with Bruce Capman, he said he will issue the permit for Lot 2, this month.

75. On October 9, 1987, Capman said he told Peter B. Bickford that our Lots are approved. And "If I don't accept the Percolation Tests the Board of Health will be in Violation of the Plaintiffs Civil Rights."

76. On April 6, 1988, I went to the Board of Health and gave Bruce Capman (3) Orders of Conditions from D.E.Q.E. approving Lot 11, Hitching Post and Lot 2, Lazell Street, Bruce Capman said call him Friday and he will let me know when he will issue the permits. Board of Health voted not to consider permits until D.E.Q.E. issued its Order of Conditions approving Lot 2. It is now resolved.

77. On April 29, 1988, Norman Levin, P.E. received a call from Bruce Capman of the Board of Health. Bruce Capman stated: "that he checked the Septic System Plans for Lots 1 and 2 and they are fine and will issue the Permits on May 2, 1988."

78. On May 2, 1988, Bruce Capman of the Board of Health called Norman Levin, P.E. can he put elevations on Test Pits we excavated at Lots 1 and 2 on October 9, 1987.

79. On May 2, 1988, talked to Bruce Capman of the Board of HEalth he said Norman Levin, P.E. is going to place Test Pit elevations on plans that he witnessed on 10-9-87.

80. In accordance with Bruce Capman's (Board of Health) instructions of May 2, 1988, Norman Levin, P.E. placed the elevations of Test Pits on plans and sent me the plans and I dropped them off to the Board of Health (4) sets of plans for Lot 1, and (4) sets of plans for Lot 2.

81. On May 3, 1988, Norman Levin, P.E. called that he was going to the Board of Health meeting on May 4, 1988.

82. On May 4, 1988, Bickford now a Member of the Planning Board, at the Board of Health Meeting.  Bruce Capman recommended to approve Lot 1 and not to approve Lot 2 because of water being next to it.

83. On May 10, 1988, Marie Manchester, Board of Health issued permit for Lot No. 1.

84. On August 29, 1988, Peter Arena Foreman for P.E. Landers said a different standard is being used for the DeLuca's in approving Lots around Town.

## COUNT VII

85.  The Plaintiff reaffirms and realleges Paragraphs 1
     through 84 above.

86.  Ms. Pine duBois the Conservation Officer of the
     Conservation Commission for the Town of Hingham filed a
     false Affidavit.

87.  On January 8, 1997, and September 19, 2002, Ms. duBois
     filed her Sworn Affidavit stating that her Degree was in
     Psychology from Loyola University.

88.  This Sworn Affidavit by Ms. duBois appears to be false.
     On checking with Loyola University they have no record
     that Ms. duBois attended Loyola.
     NOTE:  This was done by Ms. duBois to embellish her
            expertise in education and to serve in
            contradiction to the plaintiff's experts.

89.  In this instance Ms. duBois was trying to appear more
     experienced than the Engineers, Land Surveyors and
     Environmental Scientists that the plaintiff employed to
     check the wetlands lines, survey the properties and
     perform the Engineering required to design the Septic
     Systems and to draw the plans, and more importantly to
     cheat the Plaintiff.

-21-

## COUNT VIII

90. The Plaintiff reaffirms and realleges Paragraphs 1 through 89 above.

91. Peter B. Bickford, Gregory V. Sullivan and others sent letters to the Board of Health containing false information for the purpose of having the Board of Health deny and/or revoke permits.

92. The defendants after making calls to purchase the properties off the plaintiff and the plaintiff refusing to sell them to the defendants the defendants started a letter writing charade so that the Town Boards would reject or revoke the permits already issued.

93. These same defendants then started filing false complaints against the plaintiff.

94. These same defendants threatened the Plaintiff's Buyers and Potential Buyers and were then giving interviews to the Press and the Press would file the stories in the local papers.

95. These same defendants went to New Hampshire and met with the Seller of the property to the plaintiff and told him that we falsely received permits for certain lots that

were under development and that he (Gregory V. Sullivan) needed and wanted the lots. Mr. Marden denied Mr. Sullivan's claims and said the Lots were percable and he sold them to the plaintiff on this basis.

### COUNT IX

96. The Plaintiff reaffirms and realleges Paragraphs 1 through 95 above.

97. The Board of Health's Engineering Consultant Gale Associates advised the Board of Health that they were wrong in rejecting the plaintiff's Lots Numbered 1-2-3-4 and 5 on Lazell Street, and the Lots at Liberty Pole.

98. Edmund W. Atkinson, P.E. #16243 of Gale Associates advised the Board of Health that they had to issue the permits to the Plaintiff, but the Board of Health still refused.

99. Town Counsel, Mr. James A. Toomey sent the Board of Health his letter that the Plaintiff's Lots 1 and 2 Lazell Street are grandfathered under M.G.L. Chapter 111, Section 127P; and Chapter 111, Section 31E. The Board of Health still refused to issue and/or reissue the permits.