100. D.E.Q.E. sent its Order of Conditions allowing Lots 1 and 2 to go forward, the Board of Health still refused to issue the permit contrary to Town Counsel's (James A. Toomey) advice.

## COUNT X

101. The Plaintiff reaffirms and realleges Paragraphs 1 through 100 above.

102. The Board of Health violated the Plaintiff's Statutory rights in denying him his rights inherent under c. 111, s. 127P and c. 111, s. 31E.

103. The Plaintiff never agreed with the Board of Health's actions. Wherein, the Board of Health intentionally bounced the Plaintiff from one demand to another over and over again, from 1986 through the present.

104. On many occasions (From 1985 to the Present) I wrote to the Board of Health directing them to the applicable statutes, and they are: as follows:

105. Subsection 127P.  Land covered by subdivision plan; application of state environmental code
    ---------------------------------------------------------

    Whenever a person has submitted a subdivision plan, or a preliminary subdivision plan which is followed within seven months by a definitive plan, or a plan referred to in section eighty-one P or chapter forty-one, the land shown on such plan shall be governed by provisions of the state environmental code, or of the provisions of local board of health regulations which differ from said code, which are in effect at the time of first submission of said plan.  Said provisions shall apply during the time such plan is being processed, including the time required to pursue or await the determination of an appeal relative to said plan.  If such plan is approved, or if it is found such approval under the subdivision control is not required, such provisions shall apply for a period of three years from the date of the endorsement of such approval or from the endorsement that approval under the subdivision control law is not required.

    Added by St. 1981, c. 750 Subsection 1.


106. Subsection 31E.  Individual sewage disposal systems; action on applications
    ---------------------------------------------------------
    Any health officer or board of health for any city, town or district, whose authority includes the issuance of permits for construction, maintenance or alteration of individual sewage disposal systems for residential buildings of not more than four dwelling units, shall act upon a completed application for such permit to construct, maintain, or alter such system within forty-five days from the date upon which such completed application is filed with said health officer or board of health.  If a determination on a completed application is not rendered within forty-five days by the appropriate health officer or board of health, then said permit shall be deemed to have been granted.

For the purpose of this section, a completed application shall include, but not be limited to, information satisfactory to any local board of health regarding the number of deep observation holes, all percolation test results and a plan which meets the requirements of the state sanitary code and any local health regulation. Such application shall be considered filed on the date upon which a completed application is presented by the person who is seeking the permit, to the health officer, board of health or agent thereof.

For the purpose of this section, "action on a completed application" shall mean approval of said application and issuance of the permit to construct, maintain, or alter, or disapproval of said application with a written statement of the reasons for such disapproval. The written statement of reasons, in the case of disapproval shall be sent to the applicant by first class mail, postage prepaid and shall include the information necessary in order to ascertain why the application or the proposed subsurface sewage disposal system or both fail to comply with local or state code requirements.

Nothing contained in this section shall be deemed to exempt the applicant from the regulations promulgated under the provisions of section thirteen of chapter twenty-one A.

Added by St. 1983, c. 536.

107. The (4) four permits that were issued by the Chairman of the Board of Health, Raymond E. Beale, Jr., P.E. and R.L.S., and the Executive Health Officer, Samuel Bosco and their Consultants, Civil Designs Inc., are as follows:

    Lot 18, Stagecoach Road
        Permit was granted on 1-22-86
        Permit was revoked on 2-13-87

    Note:    Revocation (By Catherine Salisbury of the Board of Health) occurred 347 days after the permit was issued.

Lot 20, Stagecoach Road
    Permit was granted on 1-22-86
    Permit was revoked on 2-13-87

Note:   Revocation (By Catherine Salisbury of the Board of Health) occurred 347 days after the permit was issued.

Lot 33, Stagecoach Road
    Permit was granted on 7-28-86
    Permit was revoked on 2-13-87

Note:   Revocation (By Catherine Salisbury of the Board of Health) occurred 347 days after the permit was issued.

Lot 35, Stagecoach Road
    Permit was granted on 10-06-86
    Permit was revoked on  3-31-89

Note:   Revocation (By Catherine Salisbury of the Board of Health) occurred 1,095 days after the permit was issued.

Lot 11, Hitching Post Lane
    Full application submitted under c. 111, s. 31E on 10-06-86 and the permit was revoked on 5-31-87

Note:   Revocation (By Catherine Salisbury and Bruce T. Capman of the Board of Health) occurred 279 days after a full application was submitted and approved by The Board of Health, Raymond E. Beale, Jr., Chairman, Samuel Bosco, Executive Health Officer and their Consultant, Civil Designs Inc. under c. 111, s. 31E.

Lot  2, Lazell Street
    Full application submitted under c. 111, s. 31E on 12-31-86. Board of Health promised to issue the permit on many occasions.

Note:   Revocation (By Catherine Salisbury and Bruce T. Capman of the Board of Health) occurred 279 days after a full application was submitted under c. 111, s. 31E.

-27-

108. Since The Board of Health has violated M.G.L. Chapter 111, Section 127P; and

    M.G.L. Chapter 111, Section 31E, the Plaintiff has continually sent letters to The Board of Health demanding that the permits be reinstated.

109. The Town of Hingham's Executive Health Officer Samuel Bosco approved and issued the permits to the Plaintiff. Mr. Samuel Bosco, retired on January 1, 1987.

## COUNT XI

110. The Plaintiff reaffirms and reallges Paragraphs 1 through 109 above.

111. Mr. Raymond E. Beale, Jr. the Chairman of the Board of Health hired a new Executive Health Officer on May 26, 1987 a Mr. Bruce T. Capman.

112. When Mr. Raymond E. Beale, Jr. retired as the Chairman of the Board of Health a Ms. Catherine Salisbury was appointed.

113. Ms. Salisbury promulgated new regulations and applied them to the Plaintiff contrary to the Statute and Town Counsels (James A. Toomey) advice.

114. Town Counsel (James A. Toomey) sent Ms. Salisbury the Chairwoman of The Board of Health a letter that the Plaintiff's Lots were protected under M.G.L. c. 111, s. 127P and c. 111, s. 31E. She again disregarded his counsel.

115. The Board of Health has and is still violating c. 111, s. 127P; and c. 111, s. 31E in issuing permits and then approximately (1) one to (3) years later revoking them and is still refusing to issue and/or reissue the permits.

In part c. 111, s. 31E that applies is, as follows:

> "If a determination on a completed application is not rendered within forty-five days by the appropriate health officer or Board of Health, then said permit shall be deemed to have been granted." All of my permits fall in this category.

## COUNT XII

116. The Plaintiff reaffirms and realleges Paragraphs 1 through 115 above.

-29-

117. On October 2, 1984, with Raymond E. Beale, Jr. the Chairman of the Board of Health along with the two other members Peter Barrett, M.D. and Linda Caldwell, R.N. <u>Voted:</u> to have percolation testing November 1st if the ground water is sufficiently high.

118. The Percolation Season is usually opened to April of the following year, in this case the season was closed on or about April 1985.

119. The Plaintiff made his appointment with the Board of Health to percolate his property on Lazell Street on December 18 and 19, 1984.

120. The Percolation Tests were conducted on December 18 and 19, 1984 and they were witnessed by the Town of Hingham's Executive Health Officer, Mr. Samuel Bosco.

121. On December 21, 1984, the Executive Health officer, Samuel Bosco sent the Plaintiff his letter that to be in compliance with Title 5 of the Environmental code, he would require additional testing.

122. On December 22, 1984, the Plaintiffs Registered Professional Engineer, Norman Levin, Registration #8791, sent Mr. Bosco his letter disputing his letter of December 21, 1984, directing him to the requirements of Title 5 (cited) with the percolation testing results attached.

123. On January 14, 1985, with Raymond E. Beale, Jr. the Chairman of the Board of Health along with the two other members Peter Barrett, M.D. and Linda Caldwell, R.N. and Guy DeLuca present <u>Voted:</u> "That more tests should be made to the satisfaction of the request of the Health Officer, Samuel Bosco. The tests will be done on January 16 and 17."

124. The additional Percolation Tests were conducted on January 16 and 17, 1985 and witnessed by Samuel Bosco, The Board of Health Representative.

125. The Board of Health considered the Percolation Testing complete and on February 14, 1985, sent the Plaintiff its invoice in the sum of $150.00.

126. On February 20, 1985, the Plaintiff sent its check in the sum of $150.00.

127. On June 11, 1985, the Plaintiff filed its application for Endorsement of Plan Believed not to Require Approval.

128. On June 19, 1985, the Planning Board Voted: "Not to Endorse."

129. On July 8, 1985, The Board of Health Raymond E. Beale, Jr. the Chairman, Linda Caldwell, R.N.; and Samuel Bosco, the Executive Health Officer <u>VOTED:</u> on the Plaintiffs Request, "The Board <u>Voted:</u> to extend the soil examination and percolation tests for Lots on Lazell Street until January 1988."

130. On August 26, 1986, Mr. Peter Bickford (now a Board of Health Member) gave the Board of Health a letter from the Loring Jacobs Company disparaging the Plaintiffs testing. The letter is false. And briefly, I respond, as follows:

    The results from the Loring Jacobs Company in there reports are, <u>qualified.</u>

    a. "* Refusal is a drilling term indicating the depth of a drill hole at which further penetration is impossible or impractical with the equipment being used; and

    b.  At Page 3, Mr. James of Loring Jacobs continues:

> Regardless of the above issues, the Hingham Board of Health has recently passed a rule disallowing the use of the area between trenches for the reserve. The plans, as shown, appear to have based the utilization of the area between the trenches for reserve. Thus, this waiver must be requested and if not granted by the Board, area requirements for the septic systems will significantly increase."

    **NOTE:** I disagree with this comment even if the Board of Health did pass a rule as Mr. James claims it would have <u>no</u> effect on the Plaintiff because of the requirements contained in M.G.L. c. 111 s. 127P. (See Paragraph 105 above).

    c.  Mr. James also gave Mr. Bickford advice on "bordering Vegetated Wetlands at Lots 4 and 5."

    <u>Note:</u> There are no Vegetative Wetlands.

131. On September 9, 1986, The Board of Health Member Ms. Linda Caldwell, R.N. submitted her resignation from the Board of Health, as soon as a replacement is appointed.

-33-

132. On October 8, 1986, Mr. Raymond E. Beale, Jr. the Chairman of The Board of Health along with the two other members, Dr. Atkins and Ms. Linda Caldwell, R.N. called a meeting of the Board of Health. Among other things Mr. Raymond E. Beale, Jr. the Chairman stated:

    "New Perks were taken by Norman Levin witnessed by Sam Bosco.

    "Neighbors are concerned new tests have been taken and are acceptable according to Title V", among other things Mr. Beale finally said:

    "It is my opinion that the testing done is good testing and sufficient for Permits from the Board of Health."

133. On October 11, 1986, the Patriot Ledger came out with its Article on the Board of Health meeting of October 8, 1986, and the headline states:

    "Hingham Accepts Disputed Soil Tests."

134. On November 6, 1986, on demands by Mr. Sam Bosco the Board of Health Executive Health officer ordered the Plaintiff to install the Potable Wells, I had them installed.

135. On December 31, 1986, I submitted a package to the Board of Health by Certified Mail with the subject: Permit Application for Lot 2, Lazell Street. And included:

    (4) Sets of Plans of Leaching Field
    (4) Well Location Plans
    (1) Application for Sewage Disposal System
    (1) Copy of Testing Reports
    (1) Check in the sum of $20.00.

    The Board of Health acknowledged receipt on January 2, 1987.

136. On January 23, 1987, Mr. Sam Bosco sent me a letter that he could not issue the permit until the subdivision is in compliance with the subdivision Control Law and is recorded in the Registry of Deeds at Plymouth, MA.

137. On February 27, 1987, I sent my letter to the Board of Health, Attention: Mr. Sam Bosco, requesting the Permit for Lot 2, Lazell Street. As the Appeals Court has affirmed the Lower Court's Decision.

138. On June 25, 1987, Mr. Raymond E. Beale, Jr. the Chairman of the Board of Health along with members Anita Barry, M.D. and Catherine L. Salisbury, Esquire,

-35-

came up with a set of fact sheets for Lots 1 through 5 Lazell Street, and they never sent them to the Plaintiff. How can the Board of Health justify these fact sheets when their actions show and the court found otherwise at the Bickford Complaint at Plymouth Superior Court CA 87-1767.

See Paragraphs 132, 133, 134, 135, 136 and 137 <u>above</u> And 139, 140, 141, 142, 143, 144, 145 and 146 <u>below</u>

139. On October 9, 1987, Capman asked if I could do him a favor to excavate (2) holes at Lots 1 and 2 Lazell Street to satisfy the neighbors. I did, to accomodate Mr. Capman.

140. On October 14, 1987, at this meeting Ms. Salisbury stated Town Counsel (Toomey) told her, "don't question Lots 1 and 2, they are grandfathered by c.111 s.127P."

Ms. Salisbury then said when D.E.Q.E. acts she will act.

Raymond E. Beale, Jr.: "I second the Motion."

141. On October 20, 1987, the Board of Health wrote me a letter reiterating what paragraph 140 above states.

142. On March 1988, D.E.Q.E. sent its Order of Conditions allowing Lot 2 to go forward.

-36-

143. I received an application for a Building Permit. The following Boards signed it, Planning Board, Conservation Commission, Highway Department and the Fire Department. However, the Board of Health refused to sign it.

144. On October 15, 1987, Peter Bickford filed a Complaint (87-1767) against the Plaintiff listing Lazell Street (Lots 1 through 5) in Hingham.

145. Attached to Bickford's Complaint was the Board of Health's Fact Sheets for Lots 1 through 5, Lazell Street. How can the Board of Health justify these fact sheets, when their actions show and the court found otherwise.

    See Paragraphs 132, 133, 134, 135, 136, 137, 139, 140, 141, 142, 143 and 144 above.

    In addition, Mr. Norman Levin, P.E. filed an Affidavit to Mr. Bickfords Complaint and attached his Percolation Tests along with the tests made in the presence of Mr. Capman on October 9, 1987.

146. Judge Tuttle on October 23, 1987 dismissed the Bickford Complaint. See Paragraphs 144 and 145 above.

-37-

147. On September 9, 1988, I signed a Purchase and Sale Agreement with Walter T. Sybertz for $210,000.00 for Lot 2, Lazell Street.

148. On October 25, 1988, Mr. Walter T. Sybertz received a commitment for $430,000.00 to build a home on Lot 2, Lazell Street.

## COUNT XIII

149. The Plaintiff reaffirms and realleges Paragraphs 1 through 148 above.

150. This Count, is to show how Raymond E. Beale, Jr. the Chairman of the Board of Health (B.O.H.) treated the Plaintiff different, than he treated himself, while he developed his own property at Whiting Street, Hingham, Massachusetts.

151. The Chairman of the Board of Health performed Percolation Tests at his Lot on February 13, 1985, the same Percolation Season as the Plaintiff. However, Mr. Beale while sitting as the Chairman of the Board of Health, used complete and different principles for his own property at Whiting Street.

152. The Board of Health's Chairman, Raymond E. Beale, Jr., used his own Executive Health Officer, Samuel Bosco (his subordinate) to witness his Percolation Tests.

153. The Plaintiff requested an Extension of Time from the Board of Health and the Board of Health refused, stating it is their policy to give only one extension. However, the Chairman of the Board of Health, Mr. Raymond E. Beale, gave himself a (14) year (6) month extension at his project. See Paragraphs 13 and 14 above.

154. The Chairman of the Board of Health, sent the Plaintiff (4) letters dated March 11, 1987, April 21, 1987, May 6, 1987, and May 1, 1989. However, he did <u>not</u> send these letters or attach the same requirements to himself at his property at Whiting Street.
See Paragraphs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58 and 59

155. The Board of Health while Mr. Beale was the Chairman also violated the M.G.L. Statutes specifically c. 111, s. 127P and c. 111, s. 31E.

156. In violating these Statutes Mr. Beale prevented the Plaintiff from utilizing his property as provided to him by the constitution in the following manner: See Paragraphs 105, 106 and 107 above.

157. In contradiction to the Chairman of the Board of Health's letters of March 11, 1987, April 21, 1987, May 6, 1987 and May 1, 1989, the requirements of the Board of Health's Regulations, are totally different: See Paragraphs 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147 and 148

158. Finally, Mr. Raymond E. Beale, Jr. the Chairman of the Board of Health did <u>not</u> place any of these requirements on his property, during the percolation and construction of his Septic System.

## COUNT XIV

159. The Plaintiff reaffirms and realleges Paragraphs 1 through 158 above.

-40-

160. The Plaintiff while performing Percolation Tests at Lots 1 through 5 Lazell Street signed an agreement to purchase Lot 8 from Brian Lewis.

161. I retained a Mr. Norman Levin, P.E. Registration No. 8791, to perform the Percolation Tests on November 15, 17 and 27, 1984.

162. On October 31, 1985, we spent cleaning and picking up stumps.

163. On December 18, 1985, we spent the day performing exploratory holes preparing them for the taking of Percolation Tests.

164. On January 15, 1986, Norman Levin, P.E. was still probing the area for suitable materials. The Board of Health Agent, Mr. Samuel Bosco would not accept any area that we believed to be suitable to accept a leaching field.

165. On February 4; July 15 and July 23, 1986, we were faced with the same rejections by Mr. Samuel Bosco the Board of Health Representative as we did at Paragraphs 157 and 158 above.

-41-

166. On December 16, 1986 after performing Percolation Tests and getting the same refusal from the Board of Health, we stopped all of our efforts as the Board of Health refused any testing that we performed.

    Mr. Bosco the Board of Health Representative was present as a witness to the Percolation Testing.

    After being rejected by the Town of Hingham Board of Health we advised Brian Lewis that we were unable to convince the Board of Health to accept our Percolation Testing and we both withdrew our agreement.

167. On April 3, through April 29, 1987, Brian Lewis obtained the following approvals:

    Brian Lewis had Perkins Engineering, Inc., draw up a plan for, "Approval Under the Subdivision Control Law Not Required."

    Brian Lewis filed his "Application for Endorsement (Form A) with the Planning Board."

    The Planning Board (7) days later stamped the plan approved. See Paragraphs 35 and 36 above.

    Mr. Bosco in one year gave the Plaintiff (1) passing Percolation Test.

-42-

168. The Plaintiff accomplished Percolation Testing for over (1) one year. Permits should have been issued for this lot, because the Plaintiff came up with better test results than Mr. Choo's people got.

169. On June 14, 1987, 2 months after the Percolation Season was closed I was going by Lot 8 Lazell Street and saw a young man from L.E.A. and he was digging Test Pits with a post hole digger. I stopped to see what they were doing.

   NOTE: a. PROPER PROCEDURES WERE NOT BEING USED.
   b. PERCOLATION TESTS WERE NOT TAKEN.
   c. AND SUPPOSEDLY THE 3 HOLES THEY EXCAVATED WERE (8'.0), (26'.2") AND (35.'0) FROM THE EDGE OF THE STREET.
   D. THE PERSON CONDUCTING THE PERCOLATION TEST WAS 20 YEARS OLD FROM BRIGGS. A PERSON NAMED DAVID B. MASON AN ENGINEERING ASSISTANT.

170. Three Test Pits were taken and only two (2) Percolation Tests were taken and the alleged results were, as follows:

   T.P. No. 1 had ledge at 8.'5"  -  No Test
   T.P. No. 2 had ledge at 6.'5"  -  14.6 min.
   T.P. No. 3 had ledge at 8.'0"  -  14.0 min.

-43-