UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 03 CV 12592 REK

GAETANO P. DELUCA                                      )
                                                       )
          Plaintiff                                    )
                                                       )
     v.                                                )
                                                       )
THE TOWN OF HINGHAM, HINGHAM BOARD OF HEALTH,          )
PETER B. BICKFORD, CHAIRMAN, RAYMOND E. BEALE, JR.,    )
RUTH ANNE BECK, TREASURER/TAX COLLECTOR,               )
BRUCE T. CAPMAN, EXECUTIVE HEALTH OFFICER AND          )
FIRST HIGH STREET TRUST,                               )
                                                       )
          Defendants                                   )

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF HIS OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

---

Now comes the Plaintiff, Gaetano P. DeLuca, and respectfully

submits his Memorandum in Support of his Opposition to

Defendants' Motion to Dismiss.

BACKGROUND
---

The plaintiff filed his action on December 23, 2003.

On the same day (December 23, 2003) all defendants were

properly served.  First High Street Trust filed an Answer to

the Complaint, but on January 6, 2004, all other defendants

filed a Motion to Extend the Time to file Answers to the

Complaint. The defendants sought an additional thirty days.

Although the plaintiff opposed this Motion, On January 12, 2004, the Court granted the defendants an additional thirty days to file Answers. Instead of filing Answers on February 2, 2004, these same defendants filed a Motion for a More Definite Statement and a Motion to Stay Discovery. The plaintiff opposed both of the Motions.

On July 8, 2004, the Court issued its Memorandum and Order regarding the defendants' Motions for a More Definite Statement and for a Stay of Discovery. In essence, the Court Ordered the plaintiff to add to his Complaint (by way of an Amended Complaint) a plain statement of the Court's jurisdiction. The Court also stayed discovery until the Plaintiff Amended his Complaint.

In response to the Court's July 8, 2004 Order, the plaintiff filed and served his Amended Complaint on July 12, 2004. Instead of filing Answers to the plaintiff's Complaint, on July 22, 2004, the defendants filed a Motion to Dismiss.

The plaintiff asserts that the defendants' actions in this regard have been nothing more than a tactic to delay this case from proceeding through this Court in an orderly fashion.

-2-

LEGAL STANDARD - MOTION TO DISMISS

It is clear that a case is not subject to dismissal unless it appears to a certainty that the plaintiff cannot possible be entitled to relief under any set of facts which could be proved in support of his claim.  Seymour v. Union News Co., 217 F.2d 168 (1954).  Motions to dismiss must be carefully scrutinized, weighing doubts in favor of nondismissal. Landmark Tower Associates v. First National Bank of Chicago, 439 F.Supp. 195 (1977).

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  See U.S. v. Frank B. Killian Co., 269 F.2d 491 (1959); also see Chaney v. City of Chicago, 901 F.Supp. 266 (1995).

Motion to dismiss must be denied unless court finds beyond all doubts that plaintiff cannot prove any facts to support his claims for relief.  F.D.I.C. v. Nathan, 804 F.Supp. 888 (1992).

-3-

STATUTE OF LIMITATIONS

The defendants argue in their motion to dismiss that the
plaintiff is not permitted to assert claims because the
events which the plaintiff bases his Complaint on are more
than three years old. The defendants are wrong. As set
forth in paragraphs 11, 13, 39-59, 62-66, 75-84, 97-100, 104-
109 and 113-115 of the plaintiff's Complaint, the plaintiff
has continually and actively pursued the permits for all of
the lots in question through 2003. (Also see plaintiff's
Exhibit 22).

Further, it is undisputed that by the defendants' own actions
in granting the defendant, Raymond E. Beale, Jr., in excess
of sixteen and one half years from the time he percolated his
property on February 13, 1985 to June 8, 2001 when his
project was finally designed, the defendants have in fact
acknowledged the fact that the Statute of Limitations period
did not begin until at least June, 2001.

Thus, the plaintiff's Complaint was filed well within the
applicable limitation period. (See Plaintiff's Exhibits 13,
14, 15 and 16).

-4-

In <u>Mary V. Pagliuca v. City of Boston,</u> 626 N.E.2d 625, 35
Mass. App. Ct. 820 (1994), the Massachusetts Appeals Court
held that a Civil Rights Claim accrues on the last date of
the alleged wrongful acts.   Also see <u>Chardon v. Fernandez,</u>
454 U.S. 6, 102 S.Ct. 28 (1981).

In <u>Soo Cheol Kang v. U. Lim America, Inc.,</u> 296 F.3d 810
(2001) the U.S. Court of Appeals held that the Statute of
Limitations may be equitable tolled while (the plaintiff)
pursued his administrative remedies.

This is exactly what the plaintiff has argued in this case,
by virtue of the fact that the plaintiff has argued that from
1984 to 2003, he has pursued the approvals and permitting
process of his lots.

In sum, the plaintiff has alleged, at a minimum, the
wrongful acts occurred in 2001 and the last wrongful act
occurred in 2003. Therefore, the statute of limitations did
not begin to run until 2003.   Accordingly, the plaintiff's
action has been timely filed.

For these reasons, the defendants' Motion to Dismiss must be
denied.

DEFAMATION

The defendants argue that Count I of the plaintiff's
Complaint should be dismissed because the plaintiff did not
allege that the defendants published any defamatory statement
concerning the plaintiff. Again, the defendants are wrong.

The plaintiff alleges in paragraphs 7, 8 and 9 of his
complaint that the defendants, "allowed the neighbors in
concert with the Board of Health to Slander and Libel the
plaintiff in making false statements and distributing letters
containing false statements in the presence of the Press and
the Press published them." (Emphasis added).

The plaintiff has alleged and has pled sufficient facts in
its complaint to establish a viable defamation claim against
the defendants. (Also see Paragraphs 90-95 of the Complaint).

Under Massachusetts law, test as to whether a publication is
defamatory is whether, in the circumstances, the writing
discredits plaintiff in mind of any considerable and
respectable class of the community. Arsenault v. Allegheny
Airlines, Inc. 485 F.Supp. 1373 (1980). Further,
Massachusetts law holds that a publication is defamatory if
it tends to injure one's reputation in the community and
exposes that person to hatred, ridicule and contempt. See
Arsenault (supra).

Any writing is a "libel" that discredits plaintiff in the minds of any considerable and respectable class in the community. Streeter v. Eldridge, 40 N.E.2d 254, 311 Mass. 180 (1942). Publication of defamatory matter is sufficiently accomplished by communication of libel to only one person other than person defamed. Brauer v. Globe Newspaper Co., 217 N.E.2d 736, 351 Mass. 53 (1966).

Complaint by newspaper publisher that defendants circulated a letter to publisher's advertisers stating that news was compiled without proper regard for facts was sufficient to state a cause of action for libel. Anthony v. Barsis, 193 N.E.2d 329, 346 Mass. 401 (1963).

Defamation Complaint need not set out the precise words used by particular defendants in allegedly defaming plaintiff. White v. Spence, 369 N.E.2d 731, 5 Mass. App. 679 (1977).

Clearly the plaintiff has met his burden and has pled sufficient facts to establish a cause of action for slander and libel. Accordingly, the defendants' motion to dismiss must be denied.

## DISCRIMINATION/DUE PROCESS/EQUAL PROTECTION

The defendants' seek dismissal of the plaintiff's Complaint, because they claim that the plaintiff has not shown any deprivation of his due process or equal protection rights. The defendants are wrong.  The plaintiff's Complaint is replete with facts, times, dates and names which establish beyond any doubt that the plaintiff's Civil Rights were violated.

For example, the plaintiff has alleged that the defendants issued permits, and without notice, revoked these permits. Complaint, Par. 4-5, 11, 61-62, 102-109, 181-182.

The plaintiff has alleged that the defendants refused to extend his percolation test results, while agreeing to extend percolation test results of others, including that of the defendant, Raymond E. Beale, in which he effectively gave himself, with the approval of the other defendants, a fourteen and one-half year extension. Complaint, Par. 13-14, 16, 149 - 158, (Exh. 13, 14, 15 & 16).

The plaintiff has alleged that the Planning Board refused to approve his plans.  Complaint, Par. 15-37.

-8-

The defendants imposed regulations and conditions on the plaintiff which were not in effect and which were not imposed on any other person, including the defendant, Raymond E. Beale. Complaint, Par. 39-59, 150 - 158, 172 - 173.

The defendants accepted and utilized information that they knew was false and clearly fabricated for the sole purpose of refusing to issue permits to the plaintiff and for the purpose of revoking permits that had already been issued to the plaintiff. Complaint, Par. 60 - 66.

The defendants ignored the advice of their own Town Counsel, James A. Toomey, who advised the defendants that the lots were grandfathered.
Complaint, Par. 73, 99 - 100, 113 - 114, 140 - 142.

The Tax Collector before foreclosing on the property never notified the Plaintiff either by Certified Mail, Sheriff or by Publication. Complaint, Par. 175 - 177 and 192.

First and foremost, the Court must inquire under both federal and state rights law whether or not the plaintiff has a protectable property right. In this case the plaintiff has clearly set out that he in fact has a protectable property right and a right to develop his property. Bell v. Mazza, 394 Mass. 176, (1985).

-9-

Moreover, the plaintiff has set out sufficient facts establishing that the defendants have violated his civil rights with respect to his property. The plaintiff has set forth in the following paragraphs, titled Controlling Facts as set forth in Sections Part I and Part II, various examples of how his Civil Rights have been violated.

**THIS IS A CASE OF A DOUBLE STANDARD EMPLOYED BY THE TOWN OF HINGHAM**

**CONTROLLING FACTS ARE IN PART II, AT PAGES 14 - 16**

**PART I**

1.  This is a period where Raymond E. Beale, Jr. (Beale) was the Chairman of the Board of Health for the Town of Hingham, and at the same period of time he was the developer of his own property at 246 Whiting Street known as "Whiting Lane".

2.  The Board of Health (B.O.H.) on October 2, 1984, voted to open the Percolation Season starting on November 1, 1984. Complaint, Par. 14 and 117.

                                                        Exhibit 1

3.  Immediately thereafter DeLuca received its Appointment from the B.O.H. to perc his Lots.

                            -10-

4.  On December 18th, and 19th, 1984, DeLuca performed his
    Percolation Tests using Norman Levin, P.E. as the
    Engineer and Sam Bosco the Executive Health Officer as
    the Board of Health's representative who witnessed the
    Percolation Tests.  Complaint, Par. 119 and 120.

                                            Exhibit 2

5.  On December 21, 1984, the B.O.H. sent DeLuca their
    letter that the B.O.H. required additional tests to meet
    Title 5 of the State Environmental Code.
    Complaint, Par. 121.

                                            Exhibit 3

6.  On December 22, 1984, the Plaintiffs' Engineer Acme
    Associates, Norman Levin, P.E. responded for the
    plaintiff and disputed the Defendants letter of
    December 21, 1984. Complaint, Par. 122.

                                            Exhibit 4

7.  On January 14, 1985, the Town of Hingham's Board of
    Health at 7:00 PM held its meeting and voted that
    DeLuca was to take more tests to the satisfaction of
    the request of the Health Officer.  The tests will be
    done on January 16 and 17, 1985.  Complaint, Par. 123.
                                            Exhibit 5

-11-

8.  On January 16 and 17, 1985, the Plaintiff performed its
    tests ordered by the B.O.H.  With Sam Bosco the B.O.H.
    representative present to witness the tests.
    Complaint, Par. 124.

                                            Exhibit 6

9.  On February 14, 1985, the B.O.H. sent the Plaintiff its
    invoice for the Percolation Tests.  Complaint, Par. 125.
                                            Exhibit 7

10. On February 20, 1985, the Plaintiff sent the B.O.H. its
    Check #144 for $150.00 in payment for the witnessing of
    the Percolation Tests.  Complaint, Par. 126.
                                            Exhibit 8

11. On April 3, 1985, the Planning Board sent the
    Conservation Officer its letter to review the Plaintiffs
    property for wetlands.

                                            Exhibit 9

12. On April 4, 1985, the Conservation Commission responded
    with its letter to the Planning Board and found, "does
    not show wetland areas located adjacent to the brook on
    the northerly portion of the site."

                                            Exhibit 10

-12-

13. On July 8, 1985, the Plaintiff Requested to extend its
    Soil Examinations for Lots 1-2-3-4 and 5 Lazell Street.
    They were extended to January 1988.

                                              Exhibit 11

14. On January 7, 1987, the Plaintiff Requested to Extend
    the Soil Examination for Lots 1-2-3-4 and 5 Lazell
    Street.

    The Board voted to <u>Deny</u> the Plaintiff's Request because
    an extension was given previously to 1988.  "The Policy
    of the Board is to grant one extension only."
    Complaint, Par. 13 - 37.

                                              Exhibit 12

    The Board of Health's Regulations adopted on October 15,
    1998, and cited in the Defendant's Motion to Dismiss at
    Page 4 of their Argument, is wrong.   It was not
    received by the Plaintiff until February 12, 2001.
    Complaint, Par. 42, 44, 47, 49, 52, 54, 57 and 59.

    The Plaintiff actively pursued the permitting and
    maintenance process of all Lots from 1984 thru 2003.
    Complaint, Par. 3 - 5 and 104 thru 109.  (Exhibit 22)

                          -13-

**RAYMOND E. BEALE, JR.
AND
RAYMOND E. BEALE, JR., CHAIRMAN
OF THE HINGHAM BOARD OF HEALTH**

**CONTROLLING FACTS AS TO THE PERMITTING PROCESS**

**PART II**

The facts below are completely opposite to how Raymond E. Beale, Jr., as the Chairman of the Board of Health treated himself, compared to the Plaintiff.

15.  The defendant (Beale) perced his property at Whiting Lane on February 13, 1985, with his subordinate Sam Bosco the B.O.H. representative witnessing the tests. Complaint, Par. 14, 38 thru 59.

Exhibit 13

16.  The Defendant (Beale) on August 24, 1999 received his approval from the Town of Hingham. Complaint, Par. 14 and 158.

Exhibit 14

17.  The Defendant (Beale) on or about 2001, started building his Townhouse development. Complaint, Par. 14, 38 thru 59 and 158.

Exhibit 15

-14-

18.  On June 8, 2001, the State Environmental Code Title 5,
     established that:

     "The Data obtained in accordance with the procedures
      specified by 310 CMR 15.000 may be deemed valid for an
      indefinite period provided the soils within the site
      evaluated remain undisturbed and unaltered".
     Complaint, Par. 14.

                                          Exhibits 13 & 16

19.  Notwithstanding, the Chairman of the B.O.H. Raymond E.
     Beale, Jr., and personally gave himself the following
     Time Extensions:

     Beale, Perced his Lot    -  February 13, 1985
                                          Exhibit 13
     Beale, Project Approval  -  August 24, 1999
                                          Exhibit 14
     Beale, Project Designed  -  June 8, 2001
                                          Exhibit 15


     Utilizing the Title 5 Regulations dated, June 8, 2001,
     at Exhibit 16, Raymond E. Beale, Jr. was allowed 16
     years and 6 months after his Percolation Tests were
     taken on February 13, 1985, and then started
     construction during the year 2001.
     Complaint, Par. 14-37.

                                          Exhibits 13 thru 16

20.  The Defendants', Raymond E. Beale, Jr., and as the
     Chairman of the Hingham Board of Health treated the
     Plaintiff completely opposite than he did himself.
     Complaint Par. 13-37, (Exhibits 12, 13, 14, 15 and 16)

---

## EXCESSIVE USE AND/OR MISUSE OF MOTIONS
## TO DELAY THE JUDICIAL PROCESS

---

21.  On or about January 6, 2004, the defendants filed their
     Motion to extend its time to file answers.

                                            Exhibit 17


22.  On or about January 12, 2004, the Court issued its Order
     to Extend the time (30 Days) for the defendants' to file
     their answers.

                                            Exhibit 18


23.  On or about February 2, 2004, the defendants served
     their Motions on the Plaintiff For a More Definite
     Statement; and its Motion for a Stay of Discovery.

                                            Exhibit 19


-16-

24. On or about July 8, 2004, the Court issued its Memorandum and Order and Part of its Order was to deny the defendants Motion "For a More Definite Statement; and a Stay of Discovery."

Exhibit 20

25. On or about July 22, 2004, the Defendants served their Motion to Dismiss the Plaintiff's Complaint.

Exhibit 21

---

26. The Plaintiff has maintained and continuously pursued and received the permits for all of the Lots.
Complaint, Par. 11, 13, 39 - 59, 62 - 66, 75 - 84,
97 - 100, 104 - 109 and 113 - 115.

The Plaintiff re-states all of its comments prior, that if all of the conditions were met, (they were met) the permits issued. That it was the Town of Hingham, that is in Default.

The Plaintiff was in limbo, its work done on the permitting process and awaiting the Boards responsibilities to re-issue the permits that were revoked contrary to the Statutes, Regulations and Title 5.

-17-

27.  Finally, the Plaintiff continuously maintained the Lots
     up to and including April 7, 2003.

                                              Exhibit 22

In their Motion for a More Definite Statement, the defendants
made the same argument and the Court dismissed the
Defendants' allegations.  Wherein, the Court on July 8, 2004,
denied Defendants' Motion (Exhibits 19 and 20).

The above establishes beyond a doubt that the defendants
violated the plaintiff's Civil Rights, rights of Due Process
and Equal Protection afforded to him under the laws of the
United States.

Individuals may be held liable for civil rights violations
when plaintiff shows affirmative link between individuals
actions and constitutional violations.  Britton v. Maloney,
901 F.Supp. 444 (1995).

Further, local government entities may not interpose defense
of immunity in action alleging violation of constitutional
rights.  Blackburn v. Snow, 771 F.2d 556 (1985).

                              -18-

With respect to a Civil Rights Complaint, plaintiff must only allege that a federally protected right is in issue and sufficient facts to indicate that rights in question have been deprived by the defendant. See <u>Blake v. Hall,</u> 469 F. Supp. 1025 (1979).

The plaintiff has met this test, accordingly, the defendants' motion to dismiss must be denied.

Finally, the plaintiff has alleged in his Complaint that the defendants violated his right to equal protection under the laws. As set forth above, it can not be clearer that in fact the defendants treated Raymond E. Beale much differently than they treated the plaintiff. This is wrong as a matter of law and a violation of the plaintiff's constitutional rights. Equal protection principles of the Fourteenth Amendment and of the Massachusetts Declaration of Rights prohibit discriminatory application of impartial laws. <u>Commonwealth v. Franklin Fruit Co., Inc.,</u> 446 N.E.2d 63, 388 Mass. 228 (1983).

The defendants' actions have violated the plaintiff's property interests so much so that it shocks the conscience. In this regard, the defendants' conduct has violated the plaintiff's due process rights, in that the plaintiff's property interests protected by the Fourteenth Amendment. See <u>Fernandez v. Rapone,</u> 926 F.Supp. 255 (1996).

-19-

## CONCLUSION

For all of the above stated reasons, the Court should deny the Defendants' Motion to Dismiss.


Dated: August 4, 2004


Respectfully submitted,


Gaetano P. DeLuca
140 High Street
Hingham, MA 02043
(781) 749-7624