UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 03 CV 12592 REK

GAETANO P. DELUCA )
)
    Plaintiff )
)
    v. )
)
THE TOWN OF HINGHAM, HINGHAM BOARD OF HEALTH, )
PETER B. BICKFORD, CHAIRMAN, RAYMOND E. BEALE, JR., )
RUTH ANNE BECK, TREASURER/TAX COLLECTOR, )
BRUCE T. CAPMAN, EXECUTIVE HEALTH OFFICER AND )
FIRST HIGH STREET TRUST, )
)
    Defendants )

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF HIS OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

Now comes the Plaintiff, Gaetano P. DeLuca, and respectfully submits his Memorandum in Support of his Opposition to Defendants' Motion to Dismiss.

1. On September 5, 1990, the properties were deeded over to the Plaintiff because from 1984 through 1990 and to the present, the Plaintiff expended in excess of ($2,000,000.) Two Million Dollars in development costs.

                                      Book No. 1, Exhibit 1

-3-

2. On December 18, 2003, the Collector of Taxes Ruth Anne Beck sent the Plaintiff (DeLuca) her letter.

      **Book No. 1, Exhibit 2**

3. On October 2, 1984, I purchased a copy of the Board of Health's Regulations dated, September 1, 1976.

      **Book No. 1, Exhibit 3**

4. Between December 18, 1984 and January 19, 1985, the Plaintiff completed his Percolation Testing, using the September 1, 1976, Board of Health's Regulations. Complaint, Par. 96 - 126  (Par. 27 - 29 Below).

      **Book No. 1, Exhibit 3**

5. The Board of Health during this period operated as an Autonomous Board, and also contained in their Regulations were the wetlands requirements.

      **Book No. 1, Exhibit 3, Sec. 26**

6. By 1986, the Plaintiff completed his Percolation Testing on its Lots:

Lot 18, Stagecoach Road
  Permit was issued and without Notice Revoked.

  **Complaint, Par. 38-59, 101-109**

      **Book No. 2, Exhibits 1 - 9**

Lot 20, Stagecoach Road
    Permit was issued and without Notice Revoked.

    **Complaint, Par. 38-59, 101-109**

        **Book No. 3, Exhibits 1 - 9**

Lot 33, Stagecoach Road
    Permit was issued. But entry to site refused.

    **Complaint, Par. 38-59, 101-109**

        **Book No. 4, Exhibits 1 - 9**

Lot 2, Lazell Street
    Percolation Tests approved. Permit Refused.

    **Complaint, Par. 38-59, 101-109**

        **Book No. 5, Exhibits 1 - 8**

Lot 11, Hitching Post Lane
    Percolation Testing approved. Permit Refused.

    **Complaint, Par. 38-59, 101-109**

        **Book No. 5, Exhibits 1 - 10**

Lot 35, Stagecoach Road
    Percolation Testing approved, B.O.H. claims it forgot to deposit Plaintiffs check, at the B.O.H.'s request Plaintiff sent the Board of Health another replacement check.

    **Complaint, Par. 38-59, 101-109**

        **Book No. 5, Exhibits 1 - 8**

NOTE:  a.  On all Percolation Testing the Plaintiff was obligated and required to use the Board of Health Regulations dated September 1, 1976. **(Book 1, Exhibit 3)** and Par. 27 - 29.

        b.  In confirmation, See Raymond E. Beale, Jr., the Chairman of the Board of Health answers to Interrogatories, especially Question No. 8. "Beale answered September 1, 1976".

-5-

      c.    The Board of Health's Regulations are not discretionary. Thus, both sides must comply with the Regulations existing at the time of Percolation Testing.

      d.    The Board of Health abused its Authority.

                                                         **Book No. 1, Exhibit 3**

7.    On or about October 8, 1986, the Board of Health had a meeting and approved the Plaintiff's Lots on Lazell Street. Complaint, Par. 132 - 139.

                                                               **Book No. 1, Exhibit 4**

8.    On March 11, 1987, the Board of Health sent the Plaintiff a letter to submit Field Notes at another Public Hearing. This is one of many of the B.O.H.'s Redundant Meetings. (Book No. 1, Exhibit 3). The Board of Health abused its Authority. Complaint, Par. 11.

                                                             **Book No. 1, Exhibit 5**

This demand is not called for (See Book No. 1, Exhibit 3, Section 9). This information was placed on the plans drawn by the Plaintiffs Registered Professional Engineer, Norman Levin, P.E. #8791 as called for. However, they were again supplied to the Board of Health.

                                                             **Book No. 1, Exhibit 6**

9.  On February 7, 1986, the Board of Health came out with a new set of Regulations that did not apply to the Plaintiff.  The Board of Health (B.O.H.) abused its Authority.

    Book No. 1, Exhibit 7

10. On April 21, 1987, the Board of Health sent the Plaintiff another letter and the contents contained therein did not apply to the Plaintiff.  This requirement was not in the September 1, 1976 Regulations that the Plaintiff relied on.  <u>(Book No. 1, Exhibit 3).</u>  The Board of Health abused its Authority.

    Book No. 1, Exhibit 8

11. On May 6, 1987, the Board of Health sent the Plaintiff another letter and the contents contained therein did not apply to the Plaintiff.  This requirement was not in the September 1, 1976 Regulations that the Plaintiff relied on.  <u>(Book No. 1, Exhibit 3).</u>  The Board of Health abused its Authority.

    Book No. 1, Exhibit 9

-7-

12. On April 15, 1987, the Defendants issued a new set of Regulations. These Regulations at Paragraph "G" states:

> "The Board in its discretion may require observation wells."

This Regulation is after the fact and was issued to justify the Defendants (2) letters at (Book No. 1, Exhibits 8 and 9) and has no effect on the Plaintiff as the Plaintiff was bound by the September 1, 1976 Regulations. <u>(Book No. 1, Exhibit 3).</u> The Board of Health abused its Authority.

Book No. 1, Exhibit 10

13. On October 20, 1987, the Defendants sent the Plaintiffs a letter stating: When D.E.Q.E. acts, then the Board of Health will act. <u>Complaint, Par. 140-141.</u>

Book No. 1, Exhibit 11

14. On March 22, 1988, D.E.Q.E. sent its Order of Conditions approving Lot 2, Lazell Street. <u>Complaint, Par. 142.</u>

Book No. 1, Exhibit 12

However, again the Board of Health made another excuse and again rejected Lot 2, Lazell Street. The Board of Health abused its Authority.

-8-

15. On May 1, 1989, the Defendants sent the Plaintiff another letter with a different excuse that Lot 2 was rejected because of an Oxide Layer in the side of the excavation. This is positively false. And the September 1, 1976, Regulations did not have any provisions for "Oxide Layers." (Book 1, Exhibit 3). The Board of Health abused its Authority.

                                                     **Book No. 1, Exhibit 13**

16. To support its rejection and letter of May 1, 1989, The Board of Health on May 23, 1989 adopted yet another Regulation to include "Oxide Layers." This Regulation did not apply to the Plaintiff. This requirement is not in the September 1, 1976 Regulations that the Plaintiff relied on. (Book 1, Exhibit 3). The Board of Health abused its Authority.

                                      **Book No. 1, Exhibit 14 Par. 16**

17. All of the Regulations adopted by the Defendants after September 1, 1976 do not apply to the Plaintiff and in fact were not sent to the Town Clerk for approval until

October 15, 1998 and finally sent to the Plaintiff on February 10, 2001 and received on February 12, 2001. The Board of Health abused its Authority.

**Book No. 1, Exhibit 15**

18. Although the Defendants sent these Regulations to the Plaintiff on February 10, 2001, they have no effect on the Plaintiff, because I was obligated and guided by the Board of Health Regulations dated September 1, 1976. **(Book No. 1, Exhibit 3).** The Board of Health abused its Authority. (Par. 27-29 Below).

19. On June 8, 2001, the Department of Environmental Protection issued Regulations Filing and Publications 310 CMR 15.104 Percolation Testing.

**Book No. 1, Exhibit 16**

20. On January 10, 1990, the Plaintiff sent its letter to the Board of Health referencing the Board of Health's letter of May 1, 1989, which was false. The Board of Health abused its Authority.

**Book No. 1, Exhibit 17**

-10-

21. On September 16, 1992, the Plaintiff again wrote to the Board of Health, requesting Permits for all Lots. The Board of Health abused its Authority.

           **Book No. 1, Exhibit 18**

22. On November 30, 1993, May 17, 1994, September 30, 1997 and February 6, 1998, the Plaintiff wrote to the Collector of taxes to delay any action on foreclosure until the defendants issued the Plaintiff the permits promised, and they agreed. Complaint, Par. 175 - 177 and 192. This was caused because the Board of Health abused its Authority.

           **Book No. 1, Exhibit 19**

23. On July 13, 1995, the Plaintiff again wrote to the Board of Health to re-issue the permits it illegally revoked. The Board of Health abused its Authority.

           **Book No. 1, Exhibit 20**

24. On August 30, 1996, the Plaintiff again wrote to the Board of Health to re-issue the permits it illegally revoked. The Board of Health abused its Authority.

           **Book No. 1, Exhibit 21**

25. From August 3, 1990 through April 7, 2003, the Plaintiff maintained the properties involved including the potable pump at Lot 2, Lazell Street.

   **Book No. 1, Exhibit 22**

26. On January 24, 2004, the Board of Health's Engineer, Ross Engineering Company sent a letter to the Plaintiff to locate the Potable Well at Lot 2, Lazell Street.

   On January 27, 2004, the Plaintiff went to Lot 2, Lazell Street, located the Well, took measurements, placed them on a Plan and mailed it to the Board of Health.

   **Book No. 1, Exhibit 23**

27. On July 15, 2004, the Plaintiff Propounded Interrogatories on the Defendant, Raymond E. Beale, Jr.

28. On August 11, 2004, the Defendant Raymond E. Beale, Jr. served Answers on the Plaintiff Gaetano P. DeLuca.

   **Book No. 1, Exhibit 24**

29. The Defendant submitted his Answer to:

Interrogatory #8

Q. Please state the date of the Board of Health's Regulations that applied to the Plaintiff's Lots during the period of December 1984 through January of 1985?

Answer: (BY DEFENDANT RAYMOND E. BEALE, JR.)

SEPTEMBER 1, 1976

                                        Book No. 1, Exhibit 24

The Plaintiff has continually complained that the Defendants were acting contrary to their Regulations, after they approved all of the Lots, they then revoked them by falsely using Regulations adopted years later. The Board of Health abused its Authority.

                                    Book No. 1, Par. 4 thru 24

Finally, Raymond E. Beale, Jr., the Chairman of the Board of Health during the Percolation Testing of these Lots agreed and confirmed that the Plaintiff was required and did conform to the Board of Health Regulations dated, September 1, 1976. (Par. 27-29 above)

-13-

### DISCRIMINATION AND DEFAMATION

The actions by the Board of Health in the treatment of the Plaintiff caused the Plaintiff injury to its reputation in the Community and exposed the Plaintiff to hatred, ridicule and contempt.

In addition, the defendants made false statements and distributing letters containing false statements in the presence of the Press and the Press published them

Some of the actions by the defendants happened during and after the testing of the Lots, e.g.

See. Par. 2 above, Book No. 1, Exhibit 2
See  Par. 3 above, Book No. 1, Exhibit 3
See  Par. 4 above, Book No. 1, Exhibit 3
See  Par. 5 above, Book No. 1, Exhibit 3, Sec. 26
See  Par. 6 above, Book No. 2, Lot 18, Exhibit 1 -  9
See  Par. 6 above, Book No. 3, Lot 20, Exhibit 1 -  9
See  Par. 6 above, Book No. 4, Lot 33, Exhibit 1 -  9
See  Par. 6 above, Book No. 5, Lot  2, Exhibit 1 -  8
See  Par. 6 above, Book No. 5, Lot 11, Exhibit 1 - 10
See  Par. 6 above, Book No. 5, Lot 35, Exhibit 1 -  8

-14-

In addition, Book No. 1, Paragraphs 2 through 25 shows how the willful acts, including Defamation, Discrimination and Malice towards the Plaintiff by the defendants was accomplished, for the sole purpose to destroy the Plaintiff's reputation and cheat him out of his Lots and money.

Moreover, the requirements placed on the Plaintiff aforementioned were not placed on the following persons, even though they accomplished their Percolation Tests in the same period and after, as did the Plaintiff and they are, as follows:

a. Raymond E. Beale, Jr./Lowe-Accord, LLC-Whiting Lane.
b. Joseph Kennedy - Rotary Circle/Rte. 3A.
c. Brian E. Lewis/Choo - Lot 8, Lazell Street.
d. Kennedy/Durante - Oakcrest Road.
e. Gilbert/Schofield - Pinecrest Road.
f. Christopher/Andrew Walker - Summer St. Rte. 3A.
g. Joseph Kennedy/Frank Losordo - Woodbridge Road.
h. Peter Zane - Lot "C", Lazell Street.
i. David Chase/Gary James - Kress Farm.
j. George R. Bulger - 37 Ward Street.
k. Saw Mill Pond Road, 1-7 and 10.
l. David Barry - 83 Lazell Street
m. Minuteman Road - Lot 39A.

The Plaintiff further states: That First High Street Realty Trust must not have realized that, either inadvertently and/or otherwise, it did <u>not</u> have control or ownership of the Lots, when they filed their Complaint.
(Book No. 1, Exhibit 1).

The Plaintiff from the beginning (1984) developed the Lots and since September 5, 1990, has regained ownership of the Lots. (Book No. 1, Exhibit 1).

Res Judicata
------------

The Defendants argue in their Motion to Dismiss that the Plaintiff is not permitted to assert claims because the events which the Plaintiff basis his Complaint on were previously adjudicated. The Defendants are wrong.

1. The Parties are different. 2. The Defendants fraudulently revoked the permits and refused to issue other permits after they were approved. 3. The Board of Health used improper Board of Health Regulations, that did not apply to the Plaintiff. <u>Rozenas v. Ikasala,</u> 26 Mass. App. Dec. 108.

-16-

Under Massachusetts Law, collateral estoppel requires concurrence of common factual issue, prior determination of that issue in litigation between same parties, and showing that determination was in favor of party seeking to raise estoppel bar. <u>B.C.R. Transport Co., Inc. v. Fontaine,</u> 727 F. 2d 7. C.A. Mass. 1984.

Doctrine of res judicata is equitable one, and court is not bound to give res judicata effect to previous judgment if an equitable situation would thereby result, but no equitable results were shown to be likely in case at hand. <u>Walsh v. International Longshoremen's Ass'n. AFL-CIO, Local 799,</u> 630 F. 2d 864. C.A. Mass. 1980.

Operation of Collateral estoppel has four prerequisites: Issue in two suits must be identical, Issue must have been "actually litigated" in the first suit, Issue must have been necessary to the first decision, and party to be estopped must have had substantial control over the first litigation. <u>Kalman v. Berlyn Corp.,</u> 614. Supp. 1327. D.C. Mass. 1985.

> When there is an identity of parties in subsequent actions, for successful application of issue preclusion, or collateral estoppel, to later case, party must establish that issue sought to be precluded is same as that involved in prior action, that issue was actually litigated, that issue was determined by valid and final judgment, and that determination of issue was essential to judgment - Grella v. Salem Five Cent Sav. Bank, 42 F. 3d 26. C.A. 1 (Mass) 1994.

PLAINTIFF'S OPPOSITION TO THE
DEFENDANT'S SUPPLEMENT TO MOTION TO DISMISS
DATED SEPTEMBER 29, 2004 AND RECEIVED ON OCTOBER 2, 2004

---

* The grounds for Dismissal alleged by the defendant's are grounds brought on by the Defendants due to their own conduct and the abuse of authority.

* At Footnote 1. the Defendants request the Court to grant them Summary Judgment in accordance with Fed. R. Civ. P 12(e).

* The Plaintiff responds that when the Court compares the Plaintiff's response to the Defendants Motion, the Court should grant the Plaintiff Summary Judgment and the amounts contained in its Complaint.

-18-